```
                                            FILED
              UNITED STATES DISTRICT COURT IN CLERKS OFFICE
                   DISTRICT OF MASSACHUSETTS
                                         2009 MAR 23  A 11: 06
```

|  |  |
|---|---|
| STACEY HIGTOWER, | ) U.S. DISTRICT COURT<br>) DISTRICT OF MASS<br>) C.A. No. 08-CV-11955-PBS |
| Plaintiff, | ) |
| v. | ) **FIRST AMENDED COMPLAINT** |
| CITY OF BOSTON, and<br>BOSTON POLICE COMMISSIONER<br>EDWARD DAVIS,<br>Defendants. | )<br>)<br>)<br>)<br>) |

## INTRODUCTION

1.  Plaintiff Stacey Hightower ("Ms. Hightower") brings this action for declaratory and injunctive relief against Defendants, the City of Boston (the "City") and Boston Police Commissioner Edward Davis ("Commissioner Davis") (the defendants are collectively referred to as "Defendants"), concerning her Second Amendment right to keep and bear arms as secured by the Federal Constitution of the United States of America and 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4. Ms. Hightower is a natural person and a citizen of the United States. Ms. Hightower resides in a high crime section of Boston, Massachusetts known as Dorchester.

5. The City of Boston is a municipal corporation organized under the laws of the Commonwealth of Massachusetts. The City is presently enforcing the laws, customs, practices, and policies complained of in this action.

6. Commissioner Davis is the person in the City of Boston responsible for executing and administering the City's laws, customs, practices and policies regarding firearms licenses, revocations, and suspensions. Commissioner Davis is presently enforcing the laws, customs, practices, and policies complained of in this action, and is sued in both his official and individual capacities.

## FACTS

7. Ms. Hightower purchased and owns a handgun that the City of Boston confiscated in August 2008.

8. Ms. Hightower served in the Air Force of the United States of America from 1986 through 1991. In that capacity, she served on active combat duty in the Persian Gulf during Operation Desert Shield.

9. While serving in the military, Ms. Hightower was qualified to handle a variety of firearms. She earned an Honorable Discharge from the Air Force in 1991.

10. Ms. Hightower served as a police officer for the City of Boston from June 1998 through August 15, 2008. As a police officer, her duties included arresting violent criminals. In fact, during her service with the Department, Ms. Hightower arrested murderers, and members of drug cartels, intercepted narcotic shipments, and physically subdued numerous violent criminals

as part of her obligations. She was physically injured multiple times as a direct result of altercations with violent felons.

11. Ms. Hightower testified in court against numerous felons who were convicted and eventually incarcerated by the Commonwealth.

12. Like many police officers, Ms. Hightower was required to carry a firearm to ensure public safety, including her own personal safety. Despite her numerous physical confrontations with felons, Ms. Hightower never discharged her firearm to cause physical harm to a human being while she was a police officer.

13. Ms. Hightower has never been convicted for any crimes regarding the use of firearms or otherwise while she was a police officer.

14. Ms. Hightower passed firearm test to carry semi-automatic handguns and revolvers while she was a police officer. Ms. Hightower was ranked the second top shooter in her police academy class which totaled greater than seventy individuals.

15. Ms. Hightower initially applied for and received from the Commonwealth of Massachusetts a Class A License to carry concealed, large capacity firearms on or about 1999. The initial application (the "Initial Application") was never revoked, suspended, or forfeited. Moreover, the Boston Police Commissioner in power at that time granted the Initial Application for "all lawful purposes."

16. Ms. Hightower renewed her Class A License on or about July 2008 without incident. The renewal application (the "Renewal Application") was granted by Commissioner Davis and empowered Ms. Hightower to carry concealed firearms for "all lawful purposes."

17. Ms. Hightower is a law abiding citizen who has never been convicted of a felony, confined for mental illness to a mental illness facility, treated for drug or alcohol abuse, been

convicted of the unlawful possession of drugs, carried handguns into school zones without the legal authority to do so, renounced her citizenship, or been subject to a protective order.

18. The Dorchester neighborhood where Ms. Hightower resides is a high crime area of the City of Boston. Ms. Hightower's neighbors know that she was police officer.

19. Ms. Hightower owns a motorcycle which she garages at her residence. The motorcycle was tampered with and vandalized by unknown perpetrators on or about August 2, 2005. Ms. Hightower reported the vandalism of her vehicle to the Boston Police Department on or about August 2, 2005, indicating that damage to her motorcycle placed her life at risk. The perpetrators of the crime were never discovered or arrested by the Department.

20. Ms. Hightower's residence was invaded, and vandalized on or about June 28, 2007. The home invasion was immediately reported to the Boston Police Department and Ms. Hightower even submitted a written report regarding this incident on July 10, 2007. The perpetrators of the crime were never discovered or arrested by the Boston Police Department.

21. Both the incident in August 2, 2005 and June 28, 2007 caused Ms. Hightower to fear further vandalism, home invasions, and future attacks by criminals.

22. On or about August 20, 2008, Commissioner Davis sent Ms. Hightower a letter revoking the Renewal License. The only reason specified by Commissioner Davis for revoking the license was that she "completed the application form untruthfully".

23. Ms. Hightower truthfully answered all questions listed in the Renewal Application based upon the information known to her when the application was completed.

24. Ms. Hightower was 43 years old at the time she completed the Renewal Application.

25. Ms. Hightower has never been convicted of the unlawful use, possession, or sale of any narcotic or harmful drugs.

26. Ms. Hightower has never been convicted as an adult or adjudicated as a youthful offender or juvenile delinquent in any state or federal jurisdiction of (a) a felony, (b) a misdemeanor punishable by imprisonment for 2 or more years; (c) a violent crime as defined in MGL C. 140.s.121; (d) a violation of any law regulating the use, possession, ownership, sale, transfer, rental, receipt, or transportation of weapons or ammunition for which a term of imprisonment may be imposed; or (e) a violation of any law regulating the use, sale, or possession of controlled substances as defined in section 1 of MGL 94C.

27. Ms. Hightower has never been under treatment for or confinement for drug addiction or habitual drunkenness.

28. Ms. Hightower has never appeared as a defendant in any court as a defendant for any criminal offense (excluding non-criminal traffic offenses).

29. Ms. Hightower has not been under any charge(s) for any offense(s) against the law.

30. Ms. Hightower has never been the subject of a M.G.L. C209A restraining order or involved in a domestic violence charge.

31. Ms. Hightower has never had a License to Carry Firearms, Permit to Possess Firearms, or Firearms Identification Card issued under the laws of any state or territory suspended, revoked, or denied, until the revocation complained of in this action.

32. Ms. Hightower has not been the subject of any outstanding arrest warrant in any state or federal jurisdiction.

33.     On or about August 2008, Commissioner Davis also sent Ms. Hightower a Notice regarding the revocation of the Renewal License which stated in its entirety:

> "You are required to immediately surrender your firearms license(s), firearms, rifles, shotguns and ammunition pursuant to Massachusetts General Law c. 140, § 129D without delay. You must first surrender these items to a Law Enforcement Agency. Do not surrender these items at the Boston Police Headquarters. You may surrender these items at your local district station. Failure to comply may result in Criminal Complaints being sought against you"

34.     Ms. Hightower relinquished her handgun and ammunition as the Defendants forced her to do in August 2008. She has never been convicted or charged for violating any statutes regulating firearms

35.     The Defendants did not afford Ms. Hightower a hearing prior to the revocation of the Renewal License.

36.     The Defendants did not afford Ms. Hightower a hearing prior to the confiscation of her handgun.

37.     While Ms. Hightower needs to keep and bear her handgun for the purpose of self-defense, she is prevented from doing so because of the Defendants' active enforcement of the policies complained of in this action.

38.     The Second Amendment to the Constitution of the United States of America secures the fundamental right to law abiding United States citizens to keep and bear arms, including handguns, for the purpose of self-defense.

39.     The Fourteenth Amendment to the United States Constitution provides in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unites States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Cont. Amend XIV.

40. The Second Amendment right to keep and bear arms is a privilege or immunity of United States citizenship which, pursuant to the Fourteenth Amendment, states and their political subdivisions may not violate.

41. The Second Amendment right to keep and bear arms is incorporated as against the states and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment.

42. M.G.L. c. 140, § 129D ("Section 129D") provides in relevant part:

"Upon revocation, suspension or denial of an application for a firearm identification card pursuant to the conditions of section one hundred and twenty-nine B, or of any firearms license if said firearms identification card is not then in force or of any machine gun license, the person whose application was so revoked, suspended or denied shall without delay deliver or surrender, to the licensing authority where he resides, all firearms, rifles, shotguns and machine guns and ammunition which he then possesses unless an appeal is pending."

43. M.G.L. c. 140, § 131 ("Section 131") provides in relevant part:

"A license issued under this section shall be revoked or suspended by the licensing authority, or his designee, upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed. A license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license. Any revocation or suspension of a license shall be in writing and shall state the reasons therefor. Upon revocation or suspension, the licensing authority shall take possession of such license and the person whose license is so revoked or suspended shall take all actions required under the provisions of section 129D. No appeal or post-judgment motion shall operate to stay such revocation or suspension. Notices of revocation and suspension shall be forwarded to the executive director of the criminal history systems board and the commissioner of probation and shall be included in the criminal justice information system. A revoked or suspended license may be reinstated only upon the termination of all disqualifying conditions, if any."

44.     Pursuant to Chapter XIII of the City of Boston Municipal Ordinances, Commissioner Davis is responsible for setting the fees for firearm licenses in the City of Boston, including those fees established for obtaining a Class A License to carry a firearm.[1]

45.     The Defendants have adopted the laws set forth in the Statutes and ordinance above as their customs, policies or practices.

46.     The Defendants use the Statutes and ordinance complained of herein to regulate handguns not limited to the granting, revocation, suspension, and denial of firearms licenses. The Statues neither afford Ms. Hightower a hearing before a Class A License is revoked nor a hearing immediately after a Class A License is revoked.

47.     The Statues do not have exceptions which allow law abiding citizens to continue to possess their Class A License during the period after the license is revoked, but before the appeal of the license revocation or suspension is commenced.

48.     The Statues do not have exceptions which allow law abiding citizens to continue to possess or carry handguns for the purpose of self-defense during the period after their Class A license is revoked, but before the appeal of the license revocation or suspension is commenced.

49.     The Statutes do not guarantee the right to an evidentiary hearing or a right to a *de novo* review before appellate courts, and allow judges to consider hearsay evidence.

50.     Without her handgun, Ms. Hightower fears for her safety from criminal reprisals, further home invasions, and vandalism of her property. Moreover, if she possesses or carries handguns, she will be subject to arrest, criminal prosecution, incarceration, and penal fines, even for the lawful purpose of her fundamental right to self-defense.

---

[1] Sections 129D and 131 are collectively referred to as the "Statutes".

### FIRST CLAIM FOR RELIEF
### (DECLARATORY AND INJUNCTIVE RELIEF)
### VIOLATION OF THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS: THE SECOND AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND 42 U.S.C. § 1983

51.  Ms. Hightower repeats and realleges the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein.

52.  Handguns are a class of weapons that law abiding citizens like Ms. Hightower are entitled to possess and carry for the purpose of self-defense.

53.  Ms. Hightower is a law abiding citizen with the fundamental, individual right to keep arms in her home and bear them in public for the purpose of self-defense.

54.  By requiring Ms. Hightower to turnover her handgun, the Defendants have prevented her from maintaining handguns for the purpose of self-defense.

55.  The Defendants currently maintain and actively enforce a set of laws, customs, practices, and polices under the color of state law that deprive individuals, including Ms. Hightower, of her right to keep and bear arms, in violation of the Second and Fourteenth Amendments.

56.  Ms. Hightower is damaged in violation of 42 U.S.C. § 1983 because the Defendants have violated her Constitutional rights. Ms. Hightower is irreparably harmed and no adequate remedy at law exists. Ms. Hightower is therefore entitled to declaratory and injunctive relief against the Defendants' unconstitutional customs, polices, and practices.

### SECOND CLAIM FOR RELIEF
### (DECLARATORY AND INJUNCTIVE RELIEF)
### PROCEDURAL DUE PROCESS: SECOND AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND 42 U.S.C. § 1983

57.  Ms. Hightower repeats and realleges the allegations contained in Paragraphs 1 through 56 above as though fully set forth herein.

58. The Defendants forced Ms. Hightower to turnover her handgun without first conducting a hearing of any sort.

59. The Statues used by the Defendants to confiscate Ms. Hightower's handgun are inadequate and pose an unacceptable risk of erroneous deprivation of the fundamental right to keep and bear arms for the purpose of self-defense.

60. The Defendants lack substantial interests for preventing Ms. Hightower, a law abiding citizen, from currently keeping and bearing handguns for the purpose of self-defense.

61. The Defendants actively enforce a set of laws, customs, practices, and polices under the color of state law that deprive individuals, including Ms. Hightower, of their right to keep and bear arms and to procedural due process, in violation of the Second and Fourteenth Amendments.

62. Ms. Hightower is damaged in violation of 42 U.S.C. § 1983 because the Defendants have violated her Constitutional rights. Ms. Hightower is irreparably harmed and no adequate remedy at law exists. Ms. Hightower is therefore entitled to declaratory and injunctive relief against the Defendants' unconstitutional customs, polices, and practices.

### THIRD CLAIM FOR RELIEF
### (DECLARATORY AND INJUNCTIVE RELIEF)
### UNCONSTITUTIONAL LICENSING REQUIREMENT: VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND 42 U.S.C. § 1983

63. Ms. Hightower repeats and realleges the allegations contained in Paragraphs 1 through 62 above as though fully set forth herein.

64. By requiring Ms. Hightower to maintain her Class A License at their discretion, the Defendants have prevented her from keeping and bearing handguns for the lawful purposes of self-defense.

65. The Statues enforced by the Defendants are unconstitutional as written or as applied by the Defendants against Ms. Hightower, and they prevent Ms. Hightower from exercising her fundamental individual right to keep and bear arms for the purpose of self-defense.

66. The Defendants currently maintain and actively enforce a set of laws, customs, practices, and polices under the color of state law that deprive individuals, including Ms. Hightower, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments.

67. Ms. Hightower is damaged in violation of 42 U.S.C. § 1983 because the Defendants have violated her Constitutional rights. Ms. Hightower is irreparably harmed and no adequate remedy at law exists. Ms. Hightower is therefore entitled to declaratory and injunctive relief against the Defendants' unconstitutional customs, polices, and practices.

### FOURTH CLAIM FOR RELIEF
### (DECLARATORY AND INJUNCTIVE RELIEF)
### EQUAL PROTECTION: VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND 42 U.S.C. § 1983

68. Ms. Hightower repeats and realleges the allegations contained in Paragraphs 1 through 67 above as though fully set forth herein.

69. The Defendants' lack compelling interests, important interest, or governmental interests from denying law abiding citizens like Ms. Hightower the equal protection of the laws. Nor are the Statutes narrowly tailored or rationally related to governmental interests.

70. The Statues enforced by the Defendants are unconstitutional as written or as applied by the Defendants are unconstitutional, and they prevent Ms. Hightower from exercising her fundamental individual right to keep and bear arms for the purpose of self-defense.

71.     The Defendants currently maintain and actively enforce a set of laws, customs, practices, and polices under the color of state law that deprive individuals, including Ms. Hightower, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments.

72.     Ms. Hightower is damaged in violation of 42 U.S.C. § 1983 because the Defendants have violated her Constitutional rights. Ms. Hightower is irreparably harmed and no adequate remedy at law exists. Ms. Hightower is therefore entitled to declaratory and injunctive relief against the Defendants' unconstitutional customs, polices, and practices.

WHEREFORE, Plaintiff Stacey Hightower demands the following relief:

1. An order immediately requiring the Defendants to return Ms Hightower's handgun to her possession;

2. An order permanently enjoining the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the customs, policies, and practices complained of herein;

3. An order restoring Ms. Hightower's Class A license;

4. Attorney's fees and costs pursuant to 42 U.S.C. § 1988,

5. Costs of the suit; and

6. Any other further relief as the Court deems just and appropriate.

March 20, 2009

Respectfully submitted,

Chester Darling, Esq.

*[signature]*

Chester Darling
P.O. Box 550
Andover, MA 01810
978.475.2520/Fax 978.470.2219
B.B.O. # 114320