**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| STACEY HIGHTOWER, | ) | C.A. No. 08-CV-11955-PBS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF POINTS |
| | ) | AND AUTHORITIES IN SUPPORT |
| v. | ) | OF PLAINTIFF'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| CITY OF BOSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff, Stacey Hightower, by and through undersigned counsel, and

submits her memorandum of points in authorities in support of her motion for summary

judgment.

Dated: January 31, 2011          Respectfully submitted,

Chester Darling (BBO # 114320)          Alan Gura
9 Mayflower Drive          Gura & Possessky, PLLC
Andover, MA 01810          101 N. Columbus Street, Suite 405
978.475.2520          Alexandria, VA 22314
Fax 978.475.1741          703.835.9085/Fax 703.997.7665

By:  /s/ Chester Darling_____          By:  /s/ Alan Gura_____
     Chester Darling          Alan Gura

                              Attorneys for Plaintiff

# TABLE OF CONTENTS

Table of Authorities. ................................................................................................ ii

Preliminary Statement. .............................................................................................. 1

Statement of Facts. .................................................................................................... 1

Summary of Argument. .............................................................................................. 5

Argument. .................................................................................................................. 5

I.     THE SECOND AMENDMENT PROTECTS A RIGHT TO CARRY
       ARMS IN PUBLIC. ................................................................................... 5

II.    THE SECOND AMENDMENT FORBIDS CONDITIONING A FIREARMS
       CARRY LICENSE ON A "SUITABLE PERSON" STANDARD. ..................... 9

III.   DEFENDANTS HAVE VIOLATED HIGHTOWER'S
       DUE PROCESS RIGHTS ........................................................................... 13

       A.     Hightower Enjoys A Liberty Interest In Keeping and
              Carrying Arms, and a Property Interest in Her License to Do So. ............ 14

       B.     Defendants Failed to Provide Hightower with Procedural Safeguards
              that Meet the Requirements of Due Process. ........................................... 15

              1.     Hightower Has a Strong Private Interest in Her Right to Arms.... 16

              2.     Defendants' Process is Prone to a High Risk of Error that
                     Could be Significantly Alleviated by Additional Safeguards. ...... 16

              3.     The Government Lacks a Justifiable Interest in Adhering to its
                     Existing Procedure. ..................................................................... 17

       C.     Defendants Violated Hightower's Rights to Substantive Due Process..... 18

IV.    A "SUITABLE PERSON" STANDARD VIOLATES THE RIGHT
       TO EQUAL PROTECTION. ...................................................................... 18

Conclusion. ............................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*754 Orange Ave., Inc.* v. *West Haven*,
   761 F.2d 105 (2d Cir. 1985) ................................................................ 12

*Andrews* v. *State*,
   50 Tenn. 165 (1871) ..................................................................... 7, 8

*Arnett* v. *Kennedy*,
   416 U.S. 134 (1974) ....................................................................... 14

*Ashcroft* v. *ACLU*,
   542 U.S. 656 (2004) ....................................................................... 19

*Bd. of Regents* v. *Roth*,
   408 U.S. 564 (1972) ....................................................................... 14

*Beal* v. *Stern*,
   184 F.3d 117 (2d Cir. 1999) .............................................................. 12

*Berger* v. *Rhode Island Bd. of Governers*,
   832 F. Supp. 515 (D.R.I. 1993) .......................................................... 10

*Cantwell* v. *Connecticut*,
   310 U.S. 296 (1940) ................................................................... 11, 12

*Charette* v. *Town of Oyster Bay*,
   159 F.3d 749 (2d Cir. 1998) .............................................................. 11

*Chief of Police of Shelburne* v. *Moyer*,
   453 N.E.2d 461 (Mass. App. Ct. 1983). ................................................. 10

*Citizens United* v. *FEC*,
   130 S. Ct. 876 (2010) ...................................................................... 19

*City of Cleburne* v. *Cleburne Living Center*,
   473 U.S. 432 (1985) ....................................................................... 18

*City of Las Vegas* v. *Moberg*,
   485 P.2d 737 (N.M. Ct. App. 1971) ...................................................... 7

*Clark* v. *City of Lakewood*,
   259 F.3d 996 (9th Cir. 2001) . ............................................................ 11

*Clark* v. *Jeter*,
    486 U.S. 456 (1988) ................................................................................. 18

*Cleveland Bd. of Educ.* v. *Loudermill*,
    470 U.S. 532 (1985)...................................................................... 15, 17, 18

*Cronin* v. *Town of Amesbury*,
    895 F. Supp. 375 (D. Mass. 1995). ........................................................ 15

*District of Columbia* v. *Heller*,
    128 S. Ct. 2783 (2008)................................................................... passim

*Forsyth County* v. *Nationalist Movement*,
    505 U.S. 123 (1992) .......................................................................... 12, 13

*FW/PBS* v. *City of Dallas*,
    493 U.S. 215 (1990) .......................................................................... 10, 12

*Goldberg* v. *Kelly*,
    397 U.S. 254 (1970)................................................................................. 15

*Grayned* v. *City of Rockford*,
    408 U.S. 104 (1972) ............................................................................... 11

*Hague* v. *Committee for Indus. Org.*,
    307 U.S. 496 (1937) ............................................................................... 12

*Harper* v. *Virginia Board of Elections*,
    383 U.S. 663 (1966)................................................................................. 19

*Hussey* v. *City of Portland*,
    64 F.3d 1260 (9th Cir. 1995). ................................................................ 19

*In re Application of McIntyre*,
    552 A.2d 500 (Del. Super. 1988) ............................................................ 9

*In re Brickey*,
    70 P. 609 (Idaho 1902)............................................................................. 7

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza*
    *Hotel Fire Litig.*, 982 F.2d 603 (1st Cir.1992) ................................... 16

*Kellogg* v. *City of Gary*,
    562 N.E.2d 685 (Ind. 1990). ................................................................... 7

*Kuck* v. *Danahe*r,
    600 F.3d 159 (2d Cir. 2010) ................................................. 14

*Kunz* v. *New York*,
    340 U.S. 290 (1951)............................................................. 12

*Largent* v. *Texas*,
    318 U.S. 418 (1943) ............................................................ 11

*Louisiana* v. *United States*,
    380 U.S. 145 (1965) ............................................................ 11

*Marrero-Gutierrez* v. *Molina*,
    491 F.3d 1 (1st Cir. 2007). ........................................... 14

*Mathews* v. *Eldridge*,
    424 U.S. 319 (1976) ................................................. 13, 16, 17

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010) .................................................... 5, 19

*Merisme* v. *Board of Appeals on Motor Vehicle Liability Policies & Bonds*,
    27 Mass. App. Ct. 470 (1989) ............................................... 4

*Mincey* v. *Arizona*,
    437 U.S. 385 (1978)............................................................. 17

*Muscarello* v. *United States*,
    524 U.S. 125 (1998) ............................................................. 6

*Nat'l Fed'n of the Blind* v. *FTC*,
    420 F.3d 331 (4th Cir. 2005) . ........................................... 12

*Newman* v. *Massachusetts*,
    884 F.2d 19 (1st Cir. 1989) ................................... 15, 18

*Nunn* v. *State*,
    1 Ga. 243 (1846). ............................................................ 7, 8

*Oakes* v. *United States*,
    400 F.3d 92 (1st Cir. 2005) ........................................ 15

*O'Neill* v. *Baker*,
    210 F.3d 41 (1st Cir. 2000) ........................................ 15

iv

*Parker* v. *District of Columbia*,
   478 F.3d 370 (D.C. Cir. 2007). ...................................................................... 10

*Robertson* v. *Baldwin*,
   165 U.S. 275 (1897) ...................................................................................... 8

*Rogers* v. *Flynn*, No. 02-10789-RWZ,
   2003 U.S. Dist. LEXIS 5402 (D. Mass. Mar. 31, 2003). ................................. 13

*Shuttlesworth* v. *Birmingham*,
   394 U.S. 147 (1969)........................................................................... 10, 12, 13

*Spinelli* v. *City of New York*,
   579 F.3d 160 (2d Cir. 2009)........................................................................... 14

*State ex rel. City of Princeton* v. *Buckner*,
   377 S.E.2d 139 (W. Va. 1988)......................................................................... 7

*State* v. *Chandler*,
   5 La. Ann. 489 (1850). ............................................................................... 8, 9

*State* v. *Delgado*,
   692 P.2d 610 (Or. 1984) . .............................................................................. 7

*State* v. *Reid*,
   1 Ala. 612 (1840). ......................................................................................... 8

*State* v. *Rosenthal*,
   55 A. 610 (Vt. 1903). ..................................................................................... 7

*Staub* v. *City of Baxley*,
   355 U.S. 313 (1958) ........................................................................... 10, 11, 13

*Strasser* v. *Doorley*,
   432 F.2d 567 (1st Cir. 1970)........................................................................ 10

*T & A's, Inc.* v. *Town Bd. of the Town of Ramapo*,
   109 F. Supp. 2d 161 (S.D.N.Y. 2000).............................................................. 11

*United States* v. *Booker*,
   570 F. Supp. 2d 161 (D. Me. 2008). ............................................................... 7

*United States* v. *Chester*, __ F.3d __,
   2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010) . ................................ 7, 10, 19, 20

v

*United States* v. *Engstrum*,
 609 F. Supp. 2d 1227 (D. Utah 2009) .......................................................... 19

*United States* v. *Everist*,
 368 F.3d 517 (5th Cir. 2004)...................................................................... 18

*United States* v. *Marzzarella*,
 614 F.3d 85 (3d Cir. 2010) ........................................................................ 10

*United States* v. *Skoien*,
 614 F.3d 638 (7th Cir. 2010) (en banc)........................................................ 19

*United States* v. *Williams*,
 616 F.3d 685 (7th Cir. 2010). ..................................................................... 20

*United States* v. *Yancey*,
 621 F.3d 681 (7th Cir. 2010) . ..................................................................... 20

*Valdivieso Ortiz* v. *Burgos*,
 807 F.2d 6 (1st Cir. 1986) .......................................................................... 14

*Warner* v. *Selectmen of Amherst*,
 326 Mass. 435 (1950). ................................................................................. 4

## Statutes

M.G.L. c. 140, § 131......................................................................... 4, 10, 14

M.G.L. c. 30A, § 14............................................................................... 4

## Other Authorities

BLACK'S LAW DICTIONARY (6th Ed. 1998). ................................................. 6

THE AMERICAN STUDENT'S BLACKSTONE (G. Chase ed. 1884) ...................... 9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Defendants enforce a regulatory scheme by which they revoke the firearms license, and confiscate the firearms, of anyone designated "unsuitable"—a classic form of unconstitutional prior restraint. Where fundamental rights are concerned—including the fundamental right to keep and bear arms—a system of prior restraint cannot employ such unbridled discretion.

Of course, Defendants have an interest in regulating firearms in the interest of public safety, just as Defendants have an interest in regulating the time, place, or manner of speech. And Plaintiff does not challenge the idea that the state may license the carrying of firearms. But the regulatory interest here is not absolute. However else the state may regulate guns, firearms licensing must be conducted pursuant to objective standards governed by due process.

This case amply demonstrates the problems inherent in a system of unbridled discretion. Defendants summarily revoked the Class A firearms license of Stacey Hightower—a ten-year veteran of the Boston Police Force, and a victim of home invasion—over a highly-questionable claim that she was "untruthful" in a license renewal application by denying that "charges" were pending against her. Whether "charges" were indeed "pending" against Hightower is irrelevant, because there is no dispute that Hightower answered the question truthfully based on the information known to her, and perhaps more critically, because Defendants apparently concede that Hightower's response is irrelevant to her qualifications to carry a gun.

Hightower is entitled to a summary judgment as a matter of law.

**STATEMENT OF FACTS**

Plaintiff Stacey Hightower wishes to possess and carry a handgun for self-defense. SMF 1. She has extensive training and experience in the use of firearms. SMF 2, 3, 6.

Hightower was required to carry a firearm during her ten year career as a Boston Police Officer, but never discharged her firearm to cause harm to a human being. SMF 5. As a police officer, Hightower's duties included arresting violent criminals. Hightower arrested murderers and members of drug cartels, intercepted narcotic shipments, and physically subdued numerous violent criminals as part of her obligations. SMF 8. She testified in court against numerous felons who were convicted and incarcerated by the Commonwealth. SMF 9. She has also been physically injured multiple times as a direct result of altercations with violent felons. SMF 10.

Hightower resides in a high-crime neighborhood, SMF 11, where her history as a former police officer is no secret. SMF 12. Hightower has been victimized by vandalism and a home invasion. SMF 13, 14. These incidents have caused Hightower to fear further vandalism, home invasions, and future attacks by criminals. SMF 15.

In 1999, Hightower initially applied for and received a Class A License to carry firearms "for all lawful purposes." SMF 16. Defendant Davis granted Hightower's renewal application for that license on or about July 2008. SMF 17.

Because Hightower was a police officer at the time she renewed her license to carry, she was required to fill out a "Form G 13-S" in addition to the ordinary renewal form. SMF 18. Hightower completed this form on July 9, 2008. SMF 19. One of its questions asks: "Are There Any Complaints Or Charges Pending Against You?" to which Hightower answered "No." *Id*. Hightower interpreted this language to refer to criminal or administrative charges, but she was unaware of any "pending" investigations of her. SMF 20. She believed her answer to be truthful and accurate, and continues to believe so today. *Id*. Hightower's employment with the Department was covered by a collective bargaining agreement ("CBA") between the city and its Patrolmen's Union. SMF 21. Under that agreement, any derogatory comments about

2

Hightower's service could not be placed in her personnel file without her review and endorsement, CBA, art. XVI, § 9(a), and any material concerning an allegation of misconduct could only placed in her file if it was verified by an affidavit and a hearing was held regarding the allegations. CBA, art. XVI, § 9(c). *Id*. Hightower had not reviewed or endorsed any pending charges or complaints, and thus believed her answer to be truthful. SMF 21. Her completed Form GS 13-S was initialed as "reviewed by IAD" (the Internal Affairs Division) on July 30, 2008, and was then approved by Defendant Davis on August 1, 2008. SMF 22.

Around this same time, Hightower had grown dissatisfied with her career in the Department, finding few opportunities for advancement or for making use of her computer science degrees. SMF 23. On July 31, 2008, she resigned from the department to become an instructor of computer science at Cambridge College. *Id*. She submitted a notice of resignation form to the Boston Police Department, effective August 15, 2008. The resignation notice form asked, "Is resignation presented while charges are pending?" to which Hightower answered "No." SMF 24. Hightower's superior reviewed the resignation notice and recommended that it be accepted. SMF 25. Defendant Davis approved the resignation notice. SMF 26.

On or about August 20, 2008, Defendant Davis sent Hightower a letter revoking her Class A license. SMF 27. The only reason specified by Commissioner Davis for revoking the license was that she "completed the application form untruthfully." *Id*. Hightower was ordered to immediately surrender her privately-owned handgun and ammunition to the police, which she did. SMF 28.

Unbeknownst to Hightower, a "Police Commissioner's Personnel Order"—signed by Defendant Davis and dated August 18, 2008—had been placed in her personnel file without her endorsement, stating that her resignation had been "presented with charges pending." SMF 29.

3

The basis for this letter is unclear, but Defendants appear to take the position that "charges" were "pending" against Hightower relating to her testimony in a 2005 investigation of other officers. SMF 30. No hearing about these alleged charges ever occurred, and no forms concerning the incident have been endorsed by Hightower, her supervisor, or Defendant Davis per the terms of the CBA. *Id. Cf. Warner* v. *Selectmen of Amherst*, 326 Mass. 435, 437 (1950) (government cannot unilaterally alter terms of resignation). Accordingly, Hightower did not believe any charges related to this investigation were pending against her at the time she renewed her Class A license. *Id.*

Defendants' revocation decision was made summarily, without Hightower's participation or input. SMF 33. Under Massachusetts law, a Class A firearms license, once issued, may be revoked "upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed," or "if it appears that the holder is no longer a suitable person to possess such license." SMF 34; M.G.L. c. 140, § 131. "No appeal or post-judgment motion shall operate to stay such revocation or suspension." *Id.* Although a limited form of judicial review of the revocation is available, M.G.L. c. 30A, § 14, the reviewing court may credit hearsay testimony and there is no right to an evidentiary hearing. SMF 35. *See*, *e.g.*, *Merisme* v. *Board of Appeals on Motor Vehicle Liability Policies & Bonds*, 27 Mass. App. Ct. 470, 475 (1989) ("the crucial point is not whether the only evidence relied upon is hearsay inadmissible in a court of law, but, instead, is whether the hearsay carried with it certain 'indicia of reliability and probative value.'").

Defendants have admitted in their Answer that if Hightower completes a civilian License to Carry form, they will approve it, provided that "no other disqualification applies." SMF 36; Answer at ¶ 37. Defendants all but admit that no such disqualification does apply. They admit

that Hightower has no criminal or drug history that would disqualify her from carrying a gun, SMF 37, and with respect to all other information provided by Hightower on her application to renew her carry license, Defendants either admit the substance of Hightower's answers were truthful or deny knowledge sufficient to form an opinion. SMF 38.[1]

## SUMMARY OF ARGUMENT

Defendants claim authority to deny Second Amendment rights to anyone they label an "unsuitable person." But there is no such thing as a "right" that can be revoked at the complete whim of a licensing official. Regulators cannot substitute their own judgment for that of the Constitution as to whether the exercise of a particular right is a good idea. Licensing authority that implicates fundamental rights must be exercised pursuant to defined, objective standards.

Defendants' regulatory scheme also fails to afford Hightower the basic aspects of due process required by the Constitution. Hightower's was given no pre-termination hearing to present her side of the story, and the only post-deprivation process available would allow the adjudicative body to credit hearsay testimony, without any form of de novo appeal. Finally, because the challenged practice arbitrary classifies individuals in the exercise of a fundamental right, it also violates the Equal Protection Clause.

## ARGUMENT

## I. THE SECOND AMENDMENT PROTECTS A RIGHT TO CARRY ARMS IN PUBLIC.

The Second Amendment applies "*most notably* for self-defense within the home," *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3044 (2010) (plurality opinion) (emphasis

---

[1]It is unclear whether the same license would be issued Hightower, or whether, if so, it would be again summarily revoked, without cause or due process.

added), "where the need for defense of self, family, and property is most acute," *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2717 (2008), but not exclusively so. The Supreme Court confirmed that "keep and bear," U.S. Const. amend. II, refers to two distinct concepts, rejecting the argument that "keep and bear arms" was a unitary concept referring only to a right to possess weapons in the context of military duty. "At the time of the founding, as now, to 'bear' meant to 'carry.'" *Heller*, 128 S. Ct. at 2793 (citations omitted). To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 2793 (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)); BLACK'S LAW DICTIONARY 214 (6th Ed. 1998)); *see also Heller*, 128 S. Ct. at 2804 ("the Second Amendment right, protecting only individuals' liberty to keep *and carry* arms . . ."); *id.* at 2817 ("the right to keep *and carry* arms") (emphasis added). "[B]ear arms means . . . simply the carrying of arms . . ." *Heller*, 128 S. Ct. at 2796.

Having defined the Second Amendment's language as including a right to "carry" guns for self-defense, the Supreme Court instructively noted several exceptions that prove the rule. Explaining that this right is "not unlimited," in that there is no right to "carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *id.* at 2816 (citations omitted), the Court confirmed that there is a right to carry at least some weapons, in some manner, for some purpose. The Court then listed as "presumptively lawful," *id.*, at 2817 n.26, "laws forbidding the carrying of firearms in sensitive places," *id.*, at 2817, giving rise to the dual corollaries that such "presumptions" may be overcome, and that carrying bans are not presumptively lawful in non-sensitive places. *Heller*'s dissenters acknowledged that the decision protected the public carrying of arms:

6

> Given the presumption that most citizens are law abiding, and the reality that the need to defend oneself may suddenly arise in a host of locations outside the home, I fear that the District's policy choice may well be just the first of an unknown number of dominoes to be knocked off the table.

*Heller*, 128 S. Ct. at 2846 (Stevens, J., dissenting). "[T]he core right identified in *Helle*r [is] the right of a law-abiding, responsible citizen to possess *and carry* a weapon for self-defense." *United States* v. *Chester*, __ F.3d __, 2010 U.S. App. LEXIS 26508 at *26 (4th Cir. Dec. 30, 2010) (emphasis removed and added); *see also United States* v. *Booker*, 570 F. Supp. 2d 161, 162 (D. Me. 2008).

In upholding the right to carry a handgun under the Second Amendment, *Heller* broke no new ground. As early as 1846, Georgia's Supreme Court, applying the Second Amendment, quashed an indictment for the carrying of a handgun that failed to allege whether the handgun was being carried in a constitutionally-protected manner. *Nunn* v. *State*, 1 Ga. 243, 251 (1846); *see also In re Brickey*, 70 P. 609 (Idaho 1902). Numerous state constitutional right to arms provisions have likewise been interpreted as securing the right to carry a gun in public, albeit often, to be sure, subject to some regulation. *See*, *e.g.*, *Kellogg* v. *City of Gary*, 562 N.E.2d 685 (Ind. 1990); *State ex rel. City of Princeton* v. *Buckner*, 377 S.E.2d 139 (W. Va. 1988); *City of Las Vegas* v. *Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971); *State* v. *Rosenthal*, 55 A. 610 (Vt. 1903); *Andrews* v. *State*, 50 Tenn. 165 (1871); see also *State* v. *Delgado*, 692 P.2d 610 (Or. 1984) (right to carry a switchblade knife).

The right to bear arms is not abrogated by recognition of the fact it may be regulated. To the contrary, precedent approving of the government's ability to regulate the carrying of handguns confirms the general rule to which it establishes exceptions. Traditionally, "the right of the people to keep and bear arms (Article 2) is not infringed by laws prohibiting the carrying of

7

*concealed* weapons . . . ." *Robertson* v. *Baldwin*, 165 U.S. 275, 281-82 (1897) (emphasis added).
But more recently, the Supreme Court has suggested that such bans are only "presumptively"
constitutional. *Heller*, 128 S. Ct. at 2817 n.26 (emphasis added). Surveying the history of
concealed carry prohibitions, it appears time and again that such laws have been upheld as mere
regulations of the manner in which arms are carried—with the understanding that a complete ban
on the carrying of handguns is unconstitutional.

     *Heller* discussed, with approval, four state supreme court opinions that referenced this
conditional rule. *See Heller*, 128 S. Ct. at 2818 (discussing *Nunn*, *supra*, 1 Ga. 243; *Andrews*,
*supra*, 50 Tenn. 165; and *State* v. *Reid*, 1 Ala. 612, 616-17 (1840)) and 128 S. Ct. at 2809 (citing
*State* v. *Chandler*, 5 La. Ann. 489, 490 (1850)). In *Reid*, upholding a ban on the carrying of
concealed weapons, Alabama's high court explained:

> We do not desire to be understood as maintaining, that in regulating the manner of
> bearing arms, the authority of the Legislature has no other limit than its own discretion. A
> statute which, under the pretence of regulating, amounts to a destruction of the right, or
> which requires arms to be so borne as to render them wholly useless for the purpose of
> defense, would be clearly unconstitutional.

*Reid*, 1 Ala. at 616-17. *Nunn* followed *Reid*, and quashed an indictment for publicly carrying a
pistol for failing to specify how the weapon was carried. "[T]hat so much of [the act], as contains
a prohibition against bearing arms openly, is in conflict with the Constitution, and *void*.
*Nunn*, 1 Ga. at 251 (emphasis original).

     *Andrews* presaged *Heller* by finding that a revolver was a protected arm under the state
constitution's Second Amendment analog. It therefore struck down as unconstitutional the
application of a ban on the carrying of weapons to a man carrying a revolver, declaring "the
prohibition is too broad to be sustained." *Andrews*, 165 Tenn. at 187-88. Finally, in *Chandler*,

the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."

*Heller*, 128 S. Ct. at 2809 (quoting *Chandler*, 5 La. Ann. at 490). A legal treatise invoked by the

*Heller* court explained the rule succinctly:

> [I]t is generally held that statutes prohibiting the carrying of *concealed* weapons are not in conflict with these constitutional provisions, since they merely forbid the carrying of arms in a particular manner, which is likely to lead to breaches of the peace and provoke to the commission of crime, rather than contribute to public or personal defence. In some States, however, a contrary doctrine is maintained.

THE AMERICAN STUDENT'S BLACKSTONE, 84 n.11 (G. Chase ed. 1884) (emphasis original). This

understanding survives. *See*, *e.g.*, *In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del.

Super. 1988) ("[T]he right to keep and bear arms does not of necessity require that such arms

may be kept concealed."). The precedent is clear: the state may regulate the time, place and

manner of carrying guns, but cannot completely abrogate the right.

## II.   THE SECOND AMENDMENT FORBIDS CONDITIONING A FIREARMS CARRY LICENSE ON A "SUITABLE PERSON" STANDARD.

Even were administrative "charges" "pending" against Hightower at the time of her

renewal application (a claim Hightower emphatically denies), the City's summary revocation

process would be constitutionally impermissible. The statutory scheme that purports to justify

that revocation suffers from severe constitutional defects that fail to meet the elevated standards

required for the licensing of a fundamental right.

Defendants revoked Hightower's license pursuant to a statutory scheme that purports to

allow an issued license to be revoked "upon the occurrence of any event that would have

disqualified the holder from being issued such license or from having such license renewed" or

"if it *appears* that the holder is *no longer a suitable person* to possess such license." SMF 34;

9

M.G.L. c. 140, § 131 (emphasis added). No pre-termination process is required, and the same

statute declares that "[n]o appeal or post-judgment motion shall operate to stay such revocation

or suspension." *Id*. Defendants then place upon the applicant the "burden . . . to produce

substantial evidence that he is a proper person to hold a license to carry a firearm." *Chief of*

*Police of Shelburne* v. *Moyer*, 453 N.E.2d 461, 464 (Mass. App. Ct. 1983).

      This statutory scheme does not limit itself to objective standards, but instead vests broad

discretion to summarily revoke the license of anyone who "appears" is "no longer a suitable

person." The Supreme Court's prior restraint doctrine mandates higher standards:

> It is settled by a long line of recent decisions of this Court that an ordinance which . . .
> makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent
> upon the uncontrolled will of an official—as by requiring a permit or license which may
> be granted or withheld in the discretion of such official—is an unconstitutional
> censorship or prior restraint upon the enjoyment of those freedoms.

*Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted); *see also FW/PBS* v. *City of*

*Dallas*, 493 U.S. 215, 226 (1990) (plurality opinion); *Shuttlesworth* v. *Birmingham*, 394 U.S.

147, 151 (1969); *Strasser* v. *Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *Berger* v. *Rhode Island*

*Bd. of Governers*, 832 F. Supp. 515, 519 (D.R.I. 1993) ("the standards contain no guidelines or

definite requirements to limit the reviewing officer or direct his scrutiny of submitted

advertisements. This is the ultimate in unfettered discretion residing in an executive official.").

      The law of prior restraint, well-developed in the First Amendment context, provides

useful guidance here. *Chester*, 2010 U.S. App. LEXIS 26508 at *24 ("we agree with those who

advocate looking to the First Amendment as a guide in developing a standard of review for the

Second Amendment") (citations omitted); *United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d

Cir. 2010); *Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom*

*Heller* (citation omitted). Indeed, in *Staub* and its progeny, the Supreme Court did not limit its

disapproval of prior restraints to First Amendment freedoms, but spoke more generally of

"freedoms which the Constitution guarantees." *Staub*, 355 U.S. at 322.

"While prior restraints are not unconstitutional per se, any system of prior restraint comes

to the courts bearing a heavy presumption against its constitutional validity." *Clark* v. *City of*

*Lakewood*, 259 F.3d 996, 1009 (9th Cir. 2001) (citations omitted). In *Staub*, the Supreme Court

struck down an ordinance authorizing a mayor and city council "uncontrolled discretion," *Staub*,

355 U.S. at 325, to grant or refuse a permit required for soliciting memberships in organizations.

Such a permit, held the Court,

> makes enjoyment of speech contingent upon the will of the Mayor and Council of the
> City, although that fundamental right is made free from congressional abridgment by the
> First Amendment and is protected by the Fourteenth from invasion by state action. For
> these reasons, the ordinance, on its face, imposes an unconstitutional prior restraint upon
> the enjoyment of First Amendment freedoms and lays "a forbidden burden upon the
> exercise of liberty protected by the Constitution."

*Staub*, 355 U.S. at 325 (quoting *Cantwell* v. *Connecticut*, 310 U.S. 296, 307 (1940)); *see also*

*Largent* v. *Texas*, 318 U.S. 418, 422 (1943) (striking down ordinance allowing speech permit

where mayor "deems it proper or advisable."); *Louisiana* v. *United States*, 380 U.S. 145, 153

(1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the

use of laws . . . which leave the voting fate of a citizen to the passing whim or impulse of an

individual registrar."). The Second Circuit has rejected a licensing officer's assessment of what

may inure to the "welfare and benefit of the people of and visitors to the city" as a licensing

standard. *Charette* v. *Town of Oyster Bay*, 159 F.3d 749, 754 (2d Cir. 1998) (citation omitted).

> [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide
> explicit standards for those who apply them. A vague law impermissibly delegates basic
> policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective
> basis, with the attendant dangers of arbitrary and discriminatory applications.

*Grayned* v. *City of Rockford*, 408 U.S. 104, 108-9 (1972) (footnotes omitted). Thus,

11

"[t]raditionally, unconstitutional prior restraints are found in the context of judicial injunctions or a licensing scheme that places 'unbridled discretion in the hands of a government official or agency.'" *Nat'l Fed'n of the Blind* v. *FTC*, 420 F.3d 331, 350 n. 8 (4th Cir. 2005) (quoting *FW/PBS*, 493 U.S. at 225-26); *754 Orange Ave., Inc.* v. *West Haven*, 761 F.2d 105, 114 (2d Cir. 1985) ("discretion given the police department (presumably the Chief of Police) . . . sets forth no standards for the issuance or revocation of a license"). Yet

> [t]he existence of standards does not in itself preclude a finding of unbridled discretion, for the existence of discretion may turn on the looseness of the standards or the existence of a condition that effectively renders the standards meaningless as to some or all persons subject to the prior restraint.

*Beal* v. *Stern*, 184 F.3d 117, 126 n.6 (2d Cir. 1999). Standards governing prior restraints must be "narrow, objective and definite." *Shuttlesworth*, 394 U.S. at 151. Standards involving "appraisal of facts, the exercise of judgment, [or] the formation of an opinion" are unacceptable. *Forsyth County* v. *Nationalist Movement*, 505 U.S. 123, 131 (1992) (quoting *Cantwell*, 310 U.S. at 305).

Public safety is invoked to justify most laws, but where a fundamental right is concerned, a mere incantation of a public safety rationale does not save arbitrary licensing schemes.

> [W]e have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places . . . There are appropriate public remedies to protect the peace and order of the community if appellant's speeches should result in disorder or violence.

*Kunz* v. *New York*, 340 U.S. 290, 294 (1951); *Shuttlesworth*, 394 U.S. at 153; *Beal*, 124 F.3d at 126 n.6. "But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." *Hague* v. *Committee for Indus. Org.*, 307 U.S. 496, 516 (1937) (plurality opinion).

*Heller* provides a useful example of these prior restraint principles applied in the Second Amendment context. Heller challenged, inter alia, the application of the District of Columbia's

requirement that handgun registrants obtain a discretionary (but never issued) permit to carry a

gun inside the home. The Supreme Court held that the city had no discretion to refuse issuance

of the permit: "Assuming that Heller is not disqualified from the exercise of Second Amendment

rights, the District must permit him to register his handgun and must issue him a license to carry

it in the home." *Heller*, 128 S. Ct. at 2822.  The city repealed its home carry permit requirement.

Accordingly, this case is not difficult. Boston's "suitable person" standard for the

revocation of a handgun carry permit, or at least, Defendants' application of that requirement,

fails constitutional scrutiny as an impermissible prior restraint. The right to carry a firearm for

self-defense is plainly among the "freedoms which the Constitution guarantees." *Staub*, 355 U.S.

at 322.[2] Accordingly, Defendants bear the burden of proving that they revoked Hightower's

license for some constitutionally-compelling reason defined by application of standards that are

"narrow, objective and definite," *Shuttlesworth*, 394 U.S. at 151, rather than the "appraisal of

facts, the exercise of judgment, [or] the formation of an opinion." *Forsyth County*, 505 U.S. at

131. Defendants plainly cannot meet this burden.

## III.   DEFENDANTS HAVE VIOLATED HIGHTOWER'S DUE PROCESS RIGHTS.

At its core, "the fundamental requirement of due process is the opportunity to be heard at

a meaningful time and in a meaningful manner." *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976)

(citation and internal quotation marks omitted). Establishing a due process violation is logically-

straightforward: a plaintiff must first identify a liberty or property interest protected by the Due

---

[2]In 2003, this court granted an unopposed motion to dismiss a challenge to the "suitable person" licensing standard, concluding that the plaintiff had "not demonstrated a deprivation of any rights, privileges, or immunities secured by the Constitution and its laws . . . ." *See Rogers* v. *Flynn*, No. 02-10789-RWZ, 2003 U.S. Dist. LEXIS 5402 at *5 (D. Mass. Mar. 31, 2003). *Heller* and *McDonald* have plainly superceded the reasoning of this unpublished opinion.

Process Clause, and then show "that the defendants, acting under color of state law, deprived it of that [protected] interest without constitutionally adequate process." *Marrero-Gutierrez* v. *Molina*, 491 F.3d 1, 8 (1st Cir. 2007) The due process violations in this case are manifest.

### A.    Hightower Enjoys A Liberty Interest In Keeping and Carrying Arms, and a Property Interest in Her License to Do So.

As described above, Hightower has a protected liberty interest in her Second Amendment right to keep and bear arms. Although *McDonald*'s five Justice majority reached this conclusion in different ways, under either the Due Process Clause or Privileges or Immunities Clause, a majority nonetheless confirmed that "the Second Amendment right is fully applicable to the States." *McDonald* at 3026. Where "a fourteenth amendment liberty interest is implicated . . . the state therefore must adhere to rigorous procedural safeguards." *Valdivieso Ortiz* v. *Burgos*, 807 F.2d 6, 8 (1st Cir. 1986); *see also Kuck* v. *Danaher*, 600 F.3d 159, 165 (2d Cir. 2010) (same).

"Property interests that are protected by the Due Process Clause of the Fourteenth Amendment are not created by that amendment" but are instead "defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Spinelli* v. *City of New York*, 579 F.3d 160, 168-69 (2d Cir. 2009) (protected property interest in a firearms dealer license) (*quoting Bd. of Regents* v. *Roth*, 408 U.S. 564, 573 (1972)). To establish a property interest in a government-conferred benefit such as a license, a plaintiff must simply demonstrate "a legitimate claim of entitlement" to such interest that is grounded in established law. *Roth*, 408 U.S. at 577. The requirements of procedural due process prohibit "the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett* v. *Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part). Having been conferred to her under M.G.L. c. 140, § 131, Hightower has a property interest in her Class A license barring Defendants from

14

revoking it without meeting the requirements of due process.

**B.      Defendants Failed to Provide Hightower with Procedural Safeguards that Meet the Requirements of Due Process.**

"[T]he concept of due process is equivalent to 'fundamental fairness.'" *Newman* v. *Massachusetts*, 884 F.2d 19, 23 (1st Cir. 1989) (citation omitted). Due process requires that impacted individuals are "entitled to the constitutional minimum of 'some kind of hearing' and 'some pretermination opportunity to respond.'" *O'Neill* v. *Baker*, 210 F.3d 41, 47-48 (1st Cir. 2000) (*quoting Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 542 (1985)) (footnote omitted). "The ubiquity of the 'notice and opportunity to be heard' principle as a matter of fundamental fairness is deeply engrained in our jurisprudence." *Oakes* v. *United States*, 400 F.3d 92, 98 (1st Cir. 2005) (citations omitted).

"The hearing, to be fair in the due process sense, implies that the person adversely affected was afforded the opportunity to respond, explain, and defend. Whether the hearing was fair depends upon the nature of the interest affected and all of the circumstances of the particular case." *Newman*, 884 F.2d at 23 (citation omitted). For example, an interest in public employment warrants only minimal pre-deprivation process, provided that adequate post-deprivation process is available. *Loudermill*, *supra*. However, an interest in continuing to receive vital public benefits warrants a more robust, full evidentiary hearing as a pre-deprivation process. *Goldberg* v. *Kelly*, 397 U.S. 254 (1970). And under some circumstances, for example, where the deprivation is only occasioned by "random and unauthorized" conduct, the existence of a post-deprivation remedy sufficiently satisfies constitutional requirements. *Cronin* v. *Town of Amesbury*, 895 F. Supp. 375, 385 (D. Mass. 1995) (citations and footnote omitted).

"[Firearms permit] renewal applicants are entitled to basic due process protections, including a

15

meaningful opportunity to be heard after a denial or revocation." *Kuck*, 600 F.3d at 165 (citing *Spinelli*, 579 F.3d at 169).

The constitutional adequacy of any process offered by the government is evaluated under the Supreme Court's three-factor test set out in *Mathews*, 424 U.S. at 335, which requires a court to consider: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including fiscal and administrative burdens that additional procedures might entail. *Id.*; *see also In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 611 (1st Cir.1992).

### 1. Hightower Has a Strong Private Interest in Her Right to Arms.

Hightower has a strong liberty interest in the exercise of her fundamental right to arms. The interest at stake is deeply rooted in the inherent, natural right of self-defense. *Heller*, 128 S. Ct. at 2801, 2817. Moreover, Hightower's interest is particularly elevated. She is a former police officer who has testified against numerous violent felons, she lives in a high-crime neighborhood, and she has already been targeted by serious crime (including home invasion). Hightower additionally has a property interest in her Class A license, as well as her confiscated firearm and ammunition.

### 2. Defendants' Process is Prone to a High Risk of Error that Could Be Significantly Alleviated by Additional Safeguards.

As this case aptly demonstrates, Defendants' current regulatory scheme allows for a high risk of erroneous deprivation that could be significantly alleviated by the simple addition of a pre-deprivation hearing as a procedural safeguard. The parties may forever dispute whether

16

"charges" were "pending" against Hightower, but it is fairly clear that Hightower answered the

question in good faith, that her personnel records would have been reviewed in any event, and

that she had nothing to gain by lying because the Defendants apparently agree that the alleged

pendency of "charges" against Hightower are not disqualifying. SMF 36; Answer at ¶ 37. Had

this revelation been made in an appropriate pre-deprivation hearing, it is highly unlikely that

Hightower would ever have been deprived of her right to her firearm—a right that could prove

critical to her safety and well-being.

### 3.    The Government Lacks a Justifiable Interest in Adhering to its Existing Procedure.

"[T]he state's ability to regulate firearms does not extinguish the liberty interest at stake

or eliminate the need to afford due process." *Kuck*, 600 F.3d at 165. The government certainly

has an interest in public safety, but it does not have a valid interest in denying Ms. Hightower—a

law-abiding citizen and former law enforcement officer—the benefit of a simple hearing before

revoking her Class A license and confiscating her firearms. While in theory, immediate

revocation of a license to carry a handgun should be permitted under limited exigent

circumstances, *cf. Mincey* v. *Arizona*, 437 U.S. 385 (1978), those are not the facts of this

case—nor do Defendants offer an adequate post-deprivation remedy.

Indeed, the facts of this case are quite similar to those which constituted a due process

violation in *Loudermill*. In that case, the defendant school board terminated Loudermill for

allegedly failing to report a felony conviction on his employment application. Loudermill had

not forgotten about the conviction, but claimed that he believed it was for a misdemeanor

offense. Because the alleged dishonesty, not the fact of the conviction or Loudermill's job

performance, was the cause for termination, Loudermill was entitled to a pre-deprivation

opportunity to clear himself. *Id*. at 545 n.10.

     **C.**    **Defendants Violated Hightower's Rights to Substantive Due Process.**

     It is well-established that "substantive due process protects an individual against arbitrary action by the government." *Newman*, 884 F.2d at 24 (citations omitted). Government action violates the requirements of substantive due process when it deprives an individual of protected liberty interests in a manner that is "unrelated to [legitimate] concerns, taken for trivial reasons, or wholly unsupported by any basis in fact." *Id*, at 26. Defendants' unsupported confiscation of Hightower's handgun and ammunition and revocation of her Class A license fail to pass this test. Per Defendants' own admission, they will return Hightower's Class A license (and presumably, her property) if she agrees to fill out a new form. SMF 36; Answer at ¶ 37. Defendants can offer no reasonable support for their claim that Hightower was untruthful in her original application, have no evidence that she poses a danger to society, and provide no justification for requiring her to jump through the administrative hoop of filing a new application form. While the government may certainly use licensing to keep firearms away from certain individuals who pose heightened dangers to society, there can be little doubt that Second Amendment rights, just like other rights, may not be violated "based on mere whimsy or convenience." *United States* v. *Everist*, 368 F.3d 517, 519 n.1 (5th Cir. 2004).

**IV.**    **A "SUITABLE PERSON" STANDARD VIOLATES THE RIGHT TO EQUAL PROTECTION.**

     The Equal Protection Clause "is essentially a direction that all person similarly situated should be treated alike." *City of Cleburne* v. *Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). "[C]lassifications affecting fundamental rights are given the most exacting scrutiny." *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (citation omitted). "Where fundamental

rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized." *Harper* v. *Virginia Board of Elections*, 383 U.S. 663, 670 (1966).

As noted above, the Second Amendment secures a fundamental right. *McDonald*, 130 S. Ct. at 3042 (plurality opinion) & 3059 (Thomas, J., concurring). Accordingly, the government typically carries the burden of proving the law "furthers a compelling interest and is narrowly tailored to achieve that interest," *Citizens United* v. *FEC*, 130 S. Ct. 876, 898 (2010) (citation omitted), a burden that cannot be met where less restrictive alternatives are available to achieve the same purpose. *Ashcroft* v. *ACLU*, 542 U.S. 656, 666 (2004); *United States* v. *Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009) (strict scrutiny in Second Amendment analysis).

Of course, the nature of the restriction or violation may impact the standard of review. For example, Plaintiff would contend that some carrying restrictions (e.g., restrictions on the carrying of guns in "sensitive places") inherently call for time, place, and manner review. Cases addressing categorical prohibitions on a type of arm are adjudicated under *Heller*'s "common use" test for protected arms. And at least two appellate courts apply intermediate scrutiny in Second Amendment cases questioning laws of the type *Heller* identified as presumptively lawful. *Chester*, 2010 U.S. App. LEXIS 26508 at *26-27; *United States* v. *Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc).

But these courts have not reserved for peaceful, law-abiding people a *lower* level of review than is employed for violent felons, drug abusers, and other dangerous individuals arguably covered by a presumptive exception. To the contrary, the Fourth Circuit applied intermediate, rather than strict scrutiny, to a domestic violence misdemeanant only because it viewed the Second Amendment's core as reaching "*law-abiding, responsible* citizen[s],"

19

*Chester*, 2010 U.S. App. LEXIS 26508 at *26 (emphasis original). The Seventh Circuit has

suggested overbreadth is a possible alternative mode of analysis. *United States* v. *Williams*, 616

F.3d 685, 693 (7th Cir. 2010); *cf. United States* v. *Yancey*, 621 F.3d 681, 685 (7th Cir. 2010)

("felon-in-possession laws could be criticized as 'wildly overinclusive'").

In any event, the classification of some individuals as "suitable" and others as

"unsuitable" is completely arbitrary and irrational. For example, Defendants have revoked

Hightower's license without pointing to any evidence that her carrying of a firearm—something

she did for ten years as a member of the Boston Police Department—poses any risk to public

safety. Nor can Defendants predict who might next be victimized by crime. The assessment that

one should have arms for self-defense is a personal choice left to individuals. Exercise of that

choice may be regulated, but the right to make it is secured by the Second Amendment. Finally,

less-restrictive alternatives are plainly available to Defendants. As in the majority of states,

Defendants may condition firearms permits on well-defined, objective standards.

## CONCLUSION

Plaintiff Hightower is entitled to a summary judgment as a matter of law, directing

Defendants to return her firearm and re-issue her the Class A permit, and declaring that any

future actions against Hightower's permit be conducted in a constitutionally adequate manner.

Dated: January 31, 2011                    Respectfully submitted,

Chester Darling (BBO # 114320)             Alan Gura
9 Mayflower Drive                          Gura & Possessky, PLLC
Andover, MA 01810                          101 N. Columbus Street, Suite 405
978.475.2520                               Alexandria, VA 22314
Fax 978.475.1741                           703.835.9085/Fax 703.997.7665

By:  /s/ Chester Darling_____      By:  /s/ Alan Gura_____
     Chester Darling                            Alan Gura
                                                Attorneys for Plaintiff

20

CERTIFICATE OF SERVICE

I, Alan Gura, hereby certify that this document filed through the ECF system was served on all counsel of record.

Date: January 31, 2011          /s/ Alan Gura_____
                                Alan Gura