Volume I                          Pages 1 - 114

                                  Exhibits 1 - 8

            UNITED STATES DISTRICT COURT

        FOR THE COMMONWEALTH OF MASSACHUSETTS

                    Civil Action No. 08-11955-PBS

********************************

STACEY HIGHTOWER,                    *

     Plaintiff,                      *

vs.                                  *

CITY OF BOSTON and BOSTON POLICE     *

COMMISSIONER EDWARD DAVIS,           *

     Defendants.                     *

********************************



         DEPOSITION of STACEY HIGHTOWER

    Thursday, December 30, 2010 at 12:00 p.m.

         City of Boston Law Department

                 City Hall

            Boston, Massachusetts

  ------ Jacqueline P. Shields, RPR, CSR ------

             REPORTERS, INC.

        CAPTURING THE OFFICIAL RECORD

        617.786.7783/FAX 617.639.0396

             www.reportersinc.com

**Stacey Hightower**
**December 30, 2010**

```
APPEARANCES:


Representing the Plaintiff:

     GURA & POSSESSKY, P.L.L.C.

     BY:  ALAN GURA, Esquire

     101 N. Columbus Street, Suite 405

     Alexandria, Virginia 22314

     703-835-9085 ~ Fax: 703-997-7665

     alan@gurapossessky.com


Representing the Defendants:

     CITY OF BOSTON LAW DEPARTMENT

     BY:  LISA SKEHILL MAKI, Esquire

     IAN D. PRIOR, Esquire

     City Hall, Room 615

     Boston, Massachusetts 02201

     617-635-4039 ~ Fax: 617-635-3199

     Lisa.Maki@cityofboston.gov

     Ian.Prior@cityofboston.gov
```

Stacey Hightower
December 30, 2010

I N D E X

| Testimony of: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| STACEY HIGHTOWER | | | | |
| By Ms. Maki | 5 | | 106 | |
| By Mr. Gura | | 103 | | -- |

E X H I B I T S

| Exhibit No. | Description | For I.D. |
|---|---|---|
| 1 | Letter dated May 18, 2005 | 31 |
| 2 | Letter dated May 26, 2005 | 32 |
| 3 | Letter dated November 4, 2005 | 34 |
| 4 | Letter dated October 10, 2007 | 41 |
| 5 | Document entitled Police | |
| 6 | License to carry firearms worksheet, | |
| | BPD sworn only | 68 |
| 7 | Letter dated August 20, 2008 | 73 |
| 8 | Application for new/renewal of a | |
| | firearms identification card | 79 |

EXHIBITS APPENDED TO ORIGINAL TRANSCRIPT

Stacey Hightower
December 30, 2010

```
 1  reserved until trial as well?

 2          MR. GURA:  Sure.

 3          MS. MAKI:  Okay.

 4                  DIRECT EXAMINATION

 5  BY MS. MAKI:

 6      Q.  Can you please state your name for the

 7  record.

 8      A.  Stacey Hightower.

 9      Q.  Can you spell Hightower, please?

10      A.  H-I-G-H-T-O-W-E-R.

11      Q.  Thank you.  Ms. Hightower, my name is Lisa

12  Maki.  I represent the City of Boston in this matter

13  along with Ian Prior.  Have you ever been deposed

14  before?

15      A.  Yes.

16      Q.  So you understand the ground rules, so I'll

17  just quickly go over them.  I will be asking a

18  series of questions about this.  If for some reason

19  you don't understand my question, please ask me to

20  rephrase it, and I will ask it a better way.  If you

21  answer my question, I will take it that you

22  understood what I've asked.  If you need a break at

23  any time, please just let me know, I just ask that

24  you don't take a break while a question has not been
```

Stacey Hightower
December 30, 2010

1  to be untruthful, isn't that right?

2          MR. GURA:   Objection.   Calls for

3  speculation.

4      A.   I don't know who found me to be untruthful,

5  that's what I'm saying.   Maybe this is a coverup.

6  Maybe the Boston Police Department decided to send

7  this out to everybody so that they could cover their

8  own butts from a lawsuit from Mr. Reddick.

9      Q.   Okay.   Let's move on.   Prior to you

10 resigning from the Boston Police Department you

11 applied for a renewal of your license to carry; is

12 that correct?

13     A.   Yes.

14     Q.   Okay.

15          MS. MAKI:   Please mark this as the next

16 exhibit.

17          (Exhibit No. 6, marked; License to carry

18 firearms worksheet, BPD sworn only.)

19 BY MS. MAKI:

20     Q.   I'm handing you Exhibit 6.   Do you

21 recognize that form?

22     A.   Yes.

23     Q.   Okay.   And in the upper right-hand corner

24 it says "7/9/08"; is that right?

69

Stacey Hightower
December 30, 2010

1      A.  Yes.

2      Q.  You filled this out.  That's the date you

3  applied for your renewal?

4      A.  Yes.

5      Q.  Is that your handwriting?

6      A.  Yes.

7      Q.  Okay.  Is everything on this piece of paper

8  your handwriting?

9      A.  Yes, except these signatures over here,

10  approved by, and over here, police commissioner, and

11  over here on the side right there, that's not my

12  handwriting either.  And none of this is my

13  handwriting over there.

14      Q.  And you're indicating the first block on

15  the right side?

16      A.  None of that's my handwriting.

17      Q.  Nothing on the right side is your

18  handwriting.  Okay.

19      A.  And this isn't my handwriting either, on

20  the left side bottom.

21      MR. GURA:  For the record, the witness is

22  indicating her handwriting is on the left side of

23  the page, not including this scribble that's

24  alongside the middle, just inside the left portion

Stacey Hightower
December 30, 2010

```
 1        Q.  You never heard that?

 2        A.  No.

 3        Q.  Is today the first day that you heard that?

 4            MR. GURA:  Can you be more specific about --

 5    it's a vague question.  Can you rephrase it?  Have

 6    you ever found out, I mean, that...

 7    BY MS. MAKI:

 8        Q.  Have you ever learned that question to mean

 9    something other than do you have criminal complaints

10    or charges pending against you?

11        A.  No.

12        Q.  Okay.  Okay.

13            MS. MAKI:  Let's mark this as Exhibit 7.

14            (Exhibit No. 7, marked; Letter dated August

15    20, 2008.)

16    BY MS. MAKI:

17        Q.  Ms. Hightower, I'm passing to you what's

18    marked as Exhibit 7.  Do you recognize that?

19        A.  Yes.

20        Q.  What do you recognize that to be?

21        A.  This was a letter sent to me telling me

22    they revoked my license to carry a firearm, sent

23    after I had left the Boston Police Department.

24        Q.  Do you know why they were revoking your
```

Stacey Hightower
December 30, 2010

```
 1    firearm?
 2            MR. GURA:  Objection.  Calls for
 3    speculation.  Best evidence rule also.
 4        A.  I'm not really sure why they revoked my
 5    firearm.  I know what this says.
 6        Q.  What does it say?
 7        A.  This says that you completed the
 8    application form untruthfully and so therefore they
 9    revoked my license to carry a firearm.  I guess I
10    should have never carried one, I guess, the whole
11    30 days I was still a police officer.
12        Q.  So when you saw that your license had been
13    revoked because you had filled out your application
14    form untruthfully, did you know what portion of the
15    --
16        A.  Absolutely not.
17        Q.  Did you ever contact anybody to find out
18    what portion of the form you had filled out
19    untruthfully?
20        A.  No, I didn't.  I think my attorney might
21    have.
22        Q.  Okay.  Who was that attorney?
23        A.  Attorney Hightower.
24        Q.  Okay.  Is that a relation to you?
```

Stacey Hightower
December 30, 2010

```
 1        A.   It's my brother.

 2        Q.   Okay.  Turning back to Exhibit 6, now you

 3   stated that you know that only Boston Police

 4   officers need to fill out this specific form, right?

 5        A.   You told me that this was a BPD sworn only

 6   form and I agreed with you.  It says "BPD sworn

 7   only."

 8        Q.   And I think you said that only Boston

 9   Police officers need to fill out this form?

10        A.   Yes.

11        Q.   Do you know why that is?

12             MR. GURA:  Objection.  Calls for

13   speculation.

14        A.   It says "BPD sworn only" on the top.

15   BY MS. MAKI:

16        Q.   You don't know why only Boston Police

17   officers have to fill out that form?

18        A.   No.

19             MR. GURA:  Calls for speculation.

20   BY MS. MAKI:

21        Q.   So other than contacting your attorney

22   after you received Exhibit 7, did you do anything

23   else?

24        A.   Not that I can think of.
```

Stacey Hightower
December 30, 2010

1    BY MS. MAKI:

2        Q.  Ms. Hightower, I think when we left off we

3    were getting ready to look at Exhibit 8.  Do you

4    recognize Exhibit 8?

5        A.  That's a terrible picture.  Am I wearing

6    this shirt?  Yes, it's me.  Criminal History Systems

7    Board.

8        Q.  Did you fill out that application?

9        A.  Yes.  To the best of my ability I believe

10   I, either I did it or the officer did it and asked

11   me questions.

12       Q.  The officer where?

13       A.  The officer at the Boston Police

14   Department.

15       Q.  Of what department would that --

16       A.  On the first floor.  Where you apply for

17   license to carry firearms.

18       Q.  Okay.  On that form, I think it's in the

19   upper right-hand corner, the first line, it says,

20   "Expiration Date."  Do you see that, "3/27/2008"?

21       A.  Upper right-hand corner of...

22       Q.  Of the first page of the application, right

23   under your photograph.

24           MR. GURA:  I think there's a sticker right

**Stacey Hightower**
**December 30, 2010**

1   under the photograph.

2   BY MS. MAKI:

3        Q.   Yes, expiration date, 3/27/2008?

4        A.   Yes, that's my birthday.

5        Q.   Okay.   Expiration date for your license to

6   carry?

7        A.   March 27, 2008.

8        Q.   Okay.

9        A.   And it just happens to be my birthday as

10  well.

11       Q.   Just a coincidence.   If you look to the

12  very back page of Exhibit 8, please.

13            MR. GURA:   I know what you're getting for

14  your birthday.

15  BY MS. MAKI:

16       Q.   Sorry, the third page, page 3 of 3.   Right

17  there.   Okay?   Is that your signature down on the

18  bottom where it says "Signature of applicant"?

19       A.   Yes.

20       Q.   And above that it says "Signed under the

21  pains and penalties of perjury this 9th day of July,

22  2008"?

23       A.   Yes.

24       Q.   Is this the day that you reapplied for your

Stacey Hightower
December 30, 2010

```
 1    license to carry?

 2         A.   Yes.

 3         Q.   And it had expired four months prior?

 4         A.   Yes.

 5         Q.   So for four months you had an expired

 6    license to carry; is that right?

 7         A.   Yes.

 8         Q.   Why is that?

 9         A.   Why is that?

10         Q.   Why did you go four months without renewing

11    your license to carry?

12         A.   I didn't need a license to carry.  You can

13    carry on your badge.  You can go purchase a weapon

14    on your badge.  You can purchase personal weapons on

15    your badge.

16         Q.   So your understanding is that you didn't

17    even need this?

18         A.   No, I didn't.  A Boston Police officer

19    doesn't need a license to carry a firearm.  That's

20    something that I want.

21         Q.   A Boston Police officer does not need a

22    license under your understanding to carry a

23    personal --

24         A.   That's right, they don't.
```

**Stacey Hightower**
**December 30, 2010**

1    Q.  Okay.

2    A.  They can go purchase on their badge.

3    Q.  Who told you that?

4    A.  I believe the firing range, I found out

5    that from the firing range.  Other police officers.

6    Q.  Do you know who at the firing range told

7    you that?

8    A.  No.

9    Q.  Okay.  Just to be clear, your understanding

10   is that you don't even need a license to carry, if

11   you're a Boston Police officer, your own personal

12   handgun?

13   A.  That's correct.

14   Q.  So why do they have these forms?

15   A.  So I wanted a license to carry because when

16   you go out of state, it's different.  So when you're

17   in the State of Massachusetts, you're in Boston,

18   sure, you can carry on your badge.  When you go to

19   another state, rules change.  I always want to be

20   safe rather than sorry, if I was carrying a firearm.

21   I just want to make sure my license was good no

22   matter where I go.  That's why.

23   Q.  So if you weren't traveling out of state,

24   it's your understanding that you didn't need a

Stacey Hightower
December 30, 2010

1   license?

2       A.   That's right.

3       Q.   Okay.   When did you first apply to have a

4   license?   A firearm license?

5       A.   I'm not really sure, however, since it had

6   expired.   So I think the first time I probably

7   applied for a license to carry a firearm may have

8   been five years prior to that, 2008.   So let's go

9   with 2003.

10      Q.   And that's the first time that you ever

11  possessed your own personal handgun?

12      A.   I'm not sure when I purchased my first

13  personal handgun.   I don't know if it was prior to

14  that or if I got my firearm from another police

15  officer at the police station.   So I'm not sure

16  exactly when I purchased that revolver.

17      Q.   So you were already a Boston Police

18  officer?

19      A.   Yes.

20      Q.   Prior to purchasing a gun from a fellow

21  police officer had you owned your own personal

22  handgun?

23      A.   No.

24      Q.   Okay.   And it was your understanding when

Stacey Hightower
December 30, 2010

1   you purchased that gun from your fellow police

2   officer that you did not need a license to carry

3   that gun?

4        A.   That's correct.

5        Q.   Okay.   But you applied for a license to

6   carry anyway?

7        A.   Yes, I did.

8        Q.   Do you remember who you purchased the

9   handgun from?

10       A.   No, I can't recall his name.

11       Q.   It was a man?

12       A.   Yes.   He worked B-2.   He doesn't work there

13   anymore, though.

14       Q.   Okay.   Have you ever applied for an FID

15   card?

16       A.   No.

17       Q.   And, I'm sorry, you said 2003 was the first

18   time that you applied for a license to carry?

19       A.   I'm pretty sure it was 2003.

20       Q.   And do you know what type of license you

21   got?

22       A.   Class A.

23       Q.   Were there any restrictions?

24       A.   No.

89

Stacey Hightower
December 30, 2010

 1   department issue, you can still work, you can still

 2   make your money or what have you.  It's strategy.

 3        Q.  Makes sense.  Do you have any other reasons

 4   for wanting to possess a gun in your home other than

 5   self-defense?

 6        A.  No.

 7        Q.  What kind of gun did you own?

 8        A.  I had a .38 Special.

 9        Q.  Is that a large capacity gun?

10        A.  No.

11        Q.  What kind of gun is that?

12        A.  It's a revolver, five.

13        Q.  And did you just have the one?

14        A.  Just that.

15        Q.  Okay.  So two guns, Boston Police

16   Department issued gun and the revolver?

17        A.  Yes.

18        Q.  Okay.  Since the revocation of your Class A

19   license, have you ever reapplied for a gun license?

20        A.  No.

21        Q.  Why is that?

22        A.  Reapplied where?

23        Q.  To the City of Boston.

24        A.  They revoked my license.

**Stacey Hightower**
**December 30, 2010**

1       Q.   Do you know you have a right to reapply?

2       A.   Yeah, sure.

3       Q.   You're aware that you can reapply?

4       A.   Sure, I can reapply.

5       Q.   So you know that, why haven't you done

6  that?

7       A.   Why would I?  They revoked my license.

8       Q.   But you understand that you can go reapply

9  for another one, right?

10       A.   Sure.

11       Q.   Okay.  Why haven't you done that?

12       A.   Because they revoked my license.

13       Q.   Okay.

14       A.   It's a waste of time.  Why would I go apply

15  when they revoked my license?

16       Q.   So you believe that because they revoked

17  your license you'll be denied if you reapply?

18       A.   It's not my belief that I would be

19  necessarily denied to care a firearm.  It's my

20  belief I would be denied a Class A.

21       Q.   A Class A, unrestricted license to carry a

22  concealed --

23       A.   That's right.

24       Q.   You don't want your gun license if you

Stacey Hightower
December 30, 2010

1    can't carry it concealed?

2         A.   That's not necessarily true.

3         Q.   Okay.

4         A.   I would like to have my gun license and be

5    able to carry it concealed.  I was a police officer

6    for ten years with the Boston Police.  I've been a

7    police officer for over 20 years.  I've arrested a

8    lot of people, a lot of criminals with very

9    dangerous pasts, drugs, and what have you.  You run

10   into people that I've arrested in the past, in malls

11   shopping, what have you.  I need to be protected

12   from these individuals who perhaps may remember me

13   or maybe I don't remember them or whatever, but I've

14   lived a very dangerous life and I've arrested some

15   dangerous people, and I would feel a lot more

16   comfortable if I could have a Class A unrestricted

17   license.

18        Q.   Okay.

19        A.   Specially since Boston Police were the ones

20   who wanted me to live in the City of Boston when I

21   wanted to live elsewhere.  So I ended up living for

22   ten years in the City of Boston where I policed, you

23   know the old saying, you know, don't shit where you

24   lay.  Well, I shit where I laid.  It's not good.

Stacey Hightower
December 30, 2010

1      Q.   Do you still live in Boston?

2      A.   Yes, I do.

3      Q.   So you haven't moved out since the three

4  years that you left the Boston Police Department?

5      A.   Can't.  The market went down.  Don't you

6  know?  Where you been?  Recession, lady.

7      Q.   I'm living in the City of Boston.

8      A.   Can't sell.  The value of the houses went

9  down around me, so I can't sell and get back.  The

10  equity isn't high enough.  Come on.

11      Q.   So back to my original question, which was

12  why you have not applied for your Class A

13  unrestricted license.

14      A.   Because I don't feel I'm going to get my

15  Class A unrestricted license.

16      Q.   But you haven't tried?

17      A.   No, I haven't.

18      Q.   And what makes you feel that you wouldn't

19  get it?

20      A.   Because of the simple fact that they

21  revoked it already.  I mean, if they wanted me to

22  have the license, they would have let me keep the

23  license.  I mean, what was all this craziness of

24  taking my license and take my firearm and leaving me

Stacey Hightower
December 30, 2010

```
 1   unprotected in a house that already had been broken
 2   into while I was a police officer?  It's scary.
 3       Q.  You didn't file an appeal to get your gun
 4   license unrevoked?
 5       A.  No.
 6       Q.  And you haven't reapplied to get your Class
 7   A unrestricted license again?
 8       A.  No.
 9       Q.  And you haven't applied to get a Class A
10   restricted license?
11       A.  No.
12       Q.  Do you have a gun, at least in your home,
13   to protect yourself?
14       A.  No.
15       Q.  And the reason that you haven't done that
16   is why again?
17       A.  Because they already revoked it.  They
18   already revoked it.  I applied, they revoked it.
19       Q.  Okay.  But you're aware of the fact that
20   you can still reapply regardless of the fact that
21   it's been revoked, right?
22       A.  Sure.  If it will make you happy, I will go
23   down there today and reapply.
24       Q.  I want you to be safe.
```

**Stacey Hightower**
**December 30, 2010**

CERTIFICATE OF COURT REPORTER

I, Jacqueline P. Shields, Registered Professional Reporter, do certify that the deposition of STACEY HIGHTOWER, in the matter of Hightower vs. City of Boston, et al. on December 30, 2010, was stenographically recorded by me; that the witness provided satisfactory evidence of identification, as prescribed by Executive Order 455 (03-13) issued by the Governor of the Commonwealth of Massachusetts, before being sworn by me, a Notary Public in and for the Commonwealth of Massachusetts; that the transcript produced by me is a true and accurate record of the proceedings to the best of my ability; that I am neither counsel for, related to, nor employed by any of the parties to the above action; and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

_____   January 9, 2011
Jacqueline P. Shields, RPR, CSR