UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STACEY HIGHTOWER<br>        Plaintiff,<br><br>    v.<br><br>CITY OF BOSTON, BOSTON POLICE<br>COMMISSIONER EDWARD DAVIS, and the<br>COMMONWEALTH OF MASSACHUSETTS,<br>        Defendants. | No. 08-CV-11955-DJC |

**MEMORANDUM BY THE COMMONWEALTH OF MASSACHUSETTS
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT *and*
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MARTHA COAKLEY
    *ATTORNEY GENERAL OF MASSACHUSETTS*

Kenneth W. Salinger (BBO # 556967)
Assistant Attorney General, Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617.963.2075
ken.salinger@state.ma.us

April 21, 2011

## Table of Contents.

**Page**

Introduction and Summary of Argument. ................................................................. 1

Legal and Factual Background. ........................................................................... 3

    1.    The Massachusetts Firearms Licensing Laws:  Class A and Class B Licenses...... 3

    2.    After Hightower's Class A License to Carry Concealed, Large Capacity
           Weapons Was Revoked For Submitting an Untruthful Application,
           She Never Appealed. ............................................................................ 5

    3.    Hightower Never Applied for a Class B License, Even After Resigning as a
           Police Officer, Because She Wants to Carry a Concealed Weapon in Public. ....... 6

Argument. ....................................................................................................... 6

    I.    The Second Amendment and Substantive Due Process Claims Are Not Ripe....... 6

          A.    The Second Amendment Does Not Give Hightower Any Right to
                 Carry a Concealed or Large Capacity Firearm in Public. .......................... 6

          B.    Because Hightower Never Sought a License to Carry an Unconcealed,
                 Regular Capacity Firearm, Counts I and III Are Not Ripe. ....................... 8

    II.    Even If the Second Amendment Were Implicated Here, It Would Not Forbid
          the Commonwealth's Firearm Licensing Requirements........................................ 9

          A.    Guns Are Not Speech:  Licensing Rules that Keep Firearms from
                 Irresponsible Persons Are Not Unconstitutional "Prior Restraints." ........ 10

          B.    At Most, Intermediate Scrutiny Would Apply......................................... 11

          C.    The Suitable Person Standard Serves a Substantial Interest, and
                 Is Also Sufficiently Definite to Pass Master Under the
                 Second Amendment. ............................................................................ 13

                1.    The "Suitable Person" Standard Is Substantially Related to
                        the Strong Public Interest In Keeping Guns Away From
                        Irresponsible Persons. .................................................................. 13

                2.    The Massachusetts "Suitable Person" Standard Is Not
                        Unduly Vague and Does Not Permit Arbitrary or
                        Capricious Licensing Decisions................................................... 14

    III.    The Revocation of Hightower's Class A License Does Not "Shock the
          Conscience" and Thus Cannot Violate Substantive Due Process........................ 15

    IV.    The Post-Deprivation Judicial Review Available To, But Never Sought By,
          Hightower Satisfies Procedural Due Process....................................................... 17

    V.    The "Suitable Person" Standard Satisfies the Equal Protection Clause. .............. 19

Conclusion. ..................................................................................................... 20

## Introduction and Summary of Argument.

Plaintiff Stacey Hightower claims that the Massachusetts statutes that allow only "suitable persons" to carry concealed, large capacity, and other firearms in public, and that govern the issuance and revocation of such a license, are unconstitutional on their face.[1]  "Facial challenges are disfavored," *Washington State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 450 (2008), and Hightower "cannot meet her heavy burden of proving there are no circumstances under which those laws could be valid."  *See McCullen v. Coakley*, 571 F.3d 167, 174 (1st Cir. 2009).  The Court should enter summary judgment in favor of the defendants and deny Hightower's motion.

Hightower relies on recent Supreme Court decisions that struck down local ordinances barring responsible, trustworthy persons from keeping an operable handgun in their home for self-defense.  *District of Columbia v. Heller*, 554 U.S. 570 (2008), held that a total "ban on handgun possession in the home violates the Second Amendment [to the United States Constitution], as does [a] prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."  *Id*. at 635.  Two years later, *McDonald v. City of Chicago, Illinois*, 130 S.Ct. 3020 (2010), extended *Heller* to the States:  a four-member plurality ruled that the "right to possess a handgun in the home for the purpose of self-defense" is "fundamental from an American perspective" and thus is incorporated into the Due Process Clause of the Fourteenth Amendment; the fifth and deciding vote concluded that the Second Amendment right recognized in *Heller* "is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause."  *Id*. at 3050 (plurality); 3059 et seq. (Thomas, J., concurring).

Neither *Heller* nor *McDonald* recognized any constitutional right to carry any weapon outside the home, or to possess or carry a concealed or large capacity firearm.  Nor do they give irresponsible persons any constitutional right to keep and bear arms:  even in the home, the Second Amendment only protects "**law-abiding, responsible citizens**."  *Heller*, 554 U.S. at 635 (emphasis added); *accord United States v. Rene E.*, 583 F.3d 8, 12-16 (1st Cir. 2009), *cert. denied*, 130 S.Ct. 1109 (2010) (juveniles have no Second Amendment right to possess or carry handguns).

I.  Hightower's Second Amendment and Substantive Due Process claims are not ripe.  The City of Boston revoked Hightower's unrestricted Class A license, which would allow her to carry a

---

[1]   First Amd Compl. (doc. no. 3), ¶¶ 46-72; P's S.J. Memo (doc. no. 29) at 9-20.

concealed, large capacity weapon in public.  But the Second Amendment does not give Hightower any such right (*see* pages 6-8, below).  Hightower concedes that she has no constitutional right to carry a concealed weapon.[2]  Any claim that Hightower has a constitutional right to carry a non-large capacity firearm openly outside her home is not yet ripe because Hightower never sought a Class B license, which does not cover concealed or large capacity firearms but would allow Hightower to keep an operable, regular capacity firearm at home and to carry one openly in public (pp. 8-9).

II.  Hightower's Second Amendment claim would fail even if it were ripe and even assuming the Second Amendment applies outside the home.  Hightower's analogy to First Amendment "prior restraint" doctrine is misplaced (pp. 10-13).  At most, the Massachusetts licensing laws would be subject to intermediate scrutiny (pp. 11-13).  They would pass muster because the Commonwealth has a substantial interest in protecting public safety by keeping guns from irresponsible people, and the "suitable person" standard is substantially related to that interest (pp. 13-14), and this statutory standard does not allow for arbitrary denial or revocation of a gun license (pp. 14-15).

III.  Nor can Hightower succeed on her substantive due process claim.  The First Circuit has held that government action must "shock the conscience" to violate substantive due process, and that cancelling a police officer's firearm license because of questions regarding the officer's continued suitability to carry a weapon, as here, does not shock the conscience (pp. 15-17).

IV.  Hightower's procedural due process claim fares no better.  Given the Commonwealth's paramount interest in protecting public safety by keeping firearms from irresponsible people, due process is satisfied by the statutory right to seek judicial review immediately after a license to carry is revoked, suspended, or denied.  Hightower's insistence that the revocation of her license was a mistake is not relevant to whether the process provided by statute was sufficient (pp. 17-19).

V.  Finally, Hightower's assertion that strict scrutiny is required under the Equal Protection Clause is also incorrect.  The scope of Hightower's right, if any, to a Class A license is determined by the Second Amendment, and rational basis scrutiny applies to any further equal protection inquiry.  The Commonwealth has a substantial interest in, and thus a rational basis for, not letting irresponsible persons possess or carry firearms (pp. 19-20).

---

[2]     *Cf.* P's S.J. Memo (doc. no. 29), at 8-9.

**Legal and Factual Background.**

1.     **The Massachusetts Firearms Licensing Laws:  Class A and Class B Licenses.**

"The Massachusetts statutory scheme" challenged by Hightower "does not prohibit all gun possession, as did the ordinances in *Heller* and *McDonald*.  Rather, Massachusetts requires a license, disqualifies specified categories of persons from obtaining licenses, and . . . grants a measure of discretion to the licensing authority to evaluate the suitability of an applicant who is not disqualified." *Commonwealth v. Lee*, 28 Mass. L. Rptr. 73, 2011 WL 710997, *2 (Mass. Super. Ct. 2011) (Fabricant, J.).

Massachusetts law establishes two categories of licenses to carry firearms:  Class A and Class B licenses.  *See* Mass. Gen. L. c. 140, § 131(a) and (b).  Holders of either license may obtain, possess, and carry "firearms" (a defined term that includes handguns but not rifles or shotguns), "rifles," or "shotguns" in their home or in public.[3]  *Id*.  But unrestricted Class A licenses are much broader.  The holder of a Class A license may (1) "carry or possess a loaded firearm in a **concealed** manner in any public place or way," or (2) obtain, possess, or carry any "**large capacity**" firearm; a Class B licensee may not.  *Id*. (emphasis added).  "Large capacity" means a semi-automatic weapon that can hold, or that can accept a device capable of holding, more than ten rounds of ammunition or more than five shotgun shells.  *Id*., § 121.  Thus, a Class B license is sufficient to keep a regular capacity firearm, rifle, or shotgun in one's home or to carry it openly in public.[4] Under either kind of license, "the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as it deems proper." *Id*. § 131(a) and (b).  Subject to several categorical disqualifications not applicable here,[5] "[a]ny person residing

---

[3]     "Firearms" are weapons that can discharge a bullet and have a barrel less than 16 inches, or can discharge shot and have a barrel less than 18 inches.  A "rifle" has a rifled bore and a barrel length of at least 16 inches.  A "shotgun" has a smooth bore, a barrel length of at least 18 inches, and an overall length of at least 26 inches.  *See* Mass. Gen. L. c. 140, § 121.

[4]     To keep a rifle or shotgun in one's home or place of business, a Massachusetts resident only needs a Firearm Identification Card.  *See* Mass. Gen. L. c. 140, § 129B.  This card does not authorize possession of a firearm except at a shooting club or range; it does not allow one to keep a handgun in one's home.  *Id*., ¶ (6).

[5]     The statutory scheme disqualifies certain categories of persons from obtaining a firearm license, including but not limited to persons:  (i) convicted of a felony, a misdemeanor punishable by imprisonment for more than two years, or a violent crime; (ii) who have been hospitalized for mental illness and are still disabled by it; (iii) who have been treated or confined for drug addiction or habitual drunkenness, and are not yet cured; (iv) less than 21 years of age; (v) who are aliens; or (vi) currently the subject of an abuse prevention restraining order or an outstanding arrest warrant.  *See* Mass. Gen. L. c. 140, § 131(d).

or having a place of business" in Massachusetts may apply for a Class A or Class B license to their local police chief or the State Police colonel.  *Id*. § 131(d).

The police chief or state police colonel may issue the license "if it appears that the applicant is a suitable person to be issued such license, and that the applicant has good reason" to carry firearms.  *Id*.  A "suitable person" is a person who is "sufficiently responsible . . . to be entrusted with a license to carry firearms."  *Wetherbee v. Costerus*, 13 Mass. L. Rptr. 159, 2001 WL 716915, *7 (Mass. Super. Ct. 2001) (Fabricant, J.); *accord Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct. 901, 901 (2003) (affirming denial of firearm license where prior restraining orders showed applicant could "not . . . be safely entrusted with firearms" and thus was not a "suitable person").

Within 40 days of the application, the licensing authority must "either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing."  Mass. Gen. L. c. 140, §131(e).  "A license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license."  *Id*. § 131(f).  The police chief or colonel may "limit any license granted under § 131 to a specified purpose."  *Ruggiero v. Police Comm'r of Boston*, 18 Mass. App. Ct. 256, 260 (1984).

The overwhelming majority of applications for licenses to carry are approved in Massachusetts.  During the three-year period ending December 31, 2010, there were 90,865 Class A and Class B licenses issued in the Commonwealth, and only 1900 (or two percent of the total) license-to-carry applications were denied.[6]  Half of those denials were due to a determination by the licensing authority that the applicant was not a suitable person; the others were because the applicant was categorically disqualified by statute.[7]

In the rare case where a license is denied, revoked, or suspended, the license applicant or holder may "file a petition to obtain judicial review" in Massachusetts district court within "90 days after receiving notice of such denial, revocation or suspension."  Mass. Gen. L. c. 140, § 131(f).  The court may order that the license be issued or reinstated if, "after a hearing," it "finds that there was no reasonable ground for denying, suspending or revoking such license and that the petitioner is not prohibited by law from possessing same."  *Id*.  "[T]he statute contemplates an evidentiary hearing"

---

[6]  Guida Aff. ¶ 7; Commonwealth's Statement of Undisputed Material Facts ("SUMF") ¶ 10.
[7]  *Id*.

in the district court. *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 44 (1993);

*Gemme v. Holden*, 2007 WL 1631265, *2, (Mass. Super. Ct. 2007) (Lemire, J.) (same under current

version of statute). The applicant or license holder is entitled to relief if she demonstrates that the

denial, revocation, or suspension was "arbitrary, capricious, or an abuse of discretion." *Godfrey*,

35 Mass. App. Ct. at 46-47. A party may seek further review in Superior Court, in an action in the

nature of certiorari under Mass. Gen. L. c. 249, § 4. *Godfrey*, 35 Mass. App. Ct. at 46. The Superior

Court's final decision may be appealed as of right. *See* Mass. R. App. P. 4.

**2.     After Hightower's Class A License to Carry Concealed, Large Capacity Weapons Was Revoked For Submitting an Untruthful Application, She Never Appealed.**

This lawsuit arises from the revocation of Hightower's unrestricted "Class A License to carry

concealed, large capacity firearms."[8] Hightower applied to the Boston Police Commissioner to

renew her license on July 9, 2008.[9] She did not seek a Class B license or a firearm identification

card.[10] Hightower had been a Boston police officer for ten years.[11] She therefore had to submit a

"Firearms Work Sheet" as part of her renewal application; civilians need not submit this form.[12]

One question on the form was "Are There Any Complaints Or Charges Pending Against You?"[13]

Hightower answered "No."[14] Based on the information submitted by Hightower, her application to

renew her Class A license was approved.[15] On July 31, 2008, Hightower submitted notice that she

was resigning from the Boston Police Department effective August 15, 2008.[16] On August 18, 2008,

Commissioner Davis determined that Hightower's resignation had been "presented with charges

pending" against her.[17] Two days later, the Commissioner revoked Hightower's Class A license

because she "completed the application form untruthfully" by stating that no charges were pending

against her when in fact she was awaiting a hearing on disciplinary charges.[18]

---

[8]    First Amd. Compl. (doc. no. 3), ¶ 15; Commonwealth's SUMF ¶ 1.
[9]    Hightower Dep. Ex. 8; Hightower Dep. Tr. at 68-69, 80-82; Commonwealth's SUMF ¶ 2.
[10]   Hightower Dep. Ex. 8; Hightower Dep. Tr. at 85; Commonwealth's SUMF ¶ 3.
[11]   First Amd. Compl. ¶ 10; Hightower Decl. ¶ 3; Hightower's SUMF ¶ 3.
[12]   Hightower Dep. Tr. at 75; Hightower Decl. ¶ 17; Hightower's SUMF ¶ 18.
[13]   Hightower Dep. Ex. 6; Hightower Decl. ¶ 18; Hightower's SUMF ¶ 19.
[14]   *Id*.
[15]   City's Answer to First Amd. Compl., ¶ 16; Hightower's SUMF ¶ 17.
[16]   Hightower Decl. ¶ 22; Hightower's SUMF ¶ 24.
[17]   Hightower Dep. Ex. 5; Hightower Decl. ¶ 25; Hightower's SUMF ¶ 29.
[18]   Hightower Dep. Ex. 7; City's Answer to First Amd. Compl. ¶ 33; Hightower's SUMF ¶ 27; Commonwealth's SUMF ¶ 4.

Hightower never appealed the revocation order.[19]  Hightower received notice of revocation

"[o]n or about August 20, 2008."[20]  The limitations period for Hightower to seek judicial review

expired 90 days later.[21]  Hightower filed this lawsuit 96 days later, on November 24, 2008.

**3.     Hightower Never Applied for a Class B License, Even After Resigning as a
         Police Officer, Because She Wants to Carry a Concealed Weapon in Public.**

Since resigning in August 2008, Hightower has not applied as a civilian for any kind of

license to carry, including a Class B license or a restricted Class A license.[22]  Hightower testified

that she is only interested in obtaining an unrestricted Class A license, and for that reason has not

sought a more restrictive license even though she believes she may be able to obtain one.[23]

Hightower explained that she "would like to have my gun license and be able to carry it concealed,"

which is why she has not sought anything other than a "Class A unrestricted license."[24]

## Argument.

**I.     THE SECOND AMENDMENT AND SUBSTANTIVE DUE PROCESS CLAIMS ARE NOT RIPE.**

**A.     The Second Amendment Does Not Give Hightower Any Right to Carry a
        Concealed or Large Capacity Firearm in Public.**

"[T]he right secured by the Second Amendment is not unlimited."  *Heller*, 554 U.S. at 626.

"It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession

of handguns in the home, recognized that the right to keep and bear arms is not 'a right to keep and

carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'"  *McDonald*,

130 S.Ct. at 3047 (plurality) (quoting *Heller*, 554 U.S. at 626).  The Court does "not read the Second

Amendment to protect the right of citizens to carry arms for *any sort* of confrontation. . . ."  *Heller*,

554 U.S. at 595 (emphasis in original).  "As examples of 'longstanding' restrictions that were [and

are] 'presumptively lawful' under the Second Amendment, the Court listed:  (1) laws prohibiting the

---

[19]    Hightower Dep. Tr. at 93; Commonwealth's SUMF ¶ 5.

[20]    Hightower Decl. ¶ 23; Commonwealth's SUMF ¶ 6.

[21]    *See* Mass. Gen. L. c. 140, § 131(f).

[22]    Hightower Dep. Tr. at 89, 93; Commonwealth's SUMF ¶ 7.

[23]    Hightower Dep. Tr. at 90 ("Q. So you believe that because they revoked your license you'll be denied
if you reapply?  A. It's not my belief that I would be necessarily denied to care [sic] a firearm.  It's my belief I
would be denied a Class A.  Q. Class A, unrestricted license to carry a concealed—
A.  That's right."); Commonwealth's SUMF ¶ 8.

[24]    Hightower Dep. Tr. at 91; Commonwealth's SUMF ¶ 9.

carrying of concealed weapons, (2) laws prohibiting the possession of firearms by felons and the mentally ill, (3) laws prohibiting the carrying of firearms 'in sensitive places such as schools and government buildings,' (4) laws imposing conditions and qualifications on the commercial sale of arms, and (5) laws prohibiting the carrying of 'dangerous and unusual weapons.'" *Rene E.*, 583 F.3d at 12 (quoting *Heller*, 554 U.S. at 626-27 & n.26). This "list does not purport to be exhaustive." *Id.* (quoting *Heller*, n.26). The Court "repeat[ed] those assurances" in *McDonald*, and stressed that applying the Second Amendment to the States "does not imperil every law regulating firearms." *McDonald*, 130 S.Ct. at 3047 (plurality). "[S]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id.* at 3046 (plurality).

Hightower has no constitutional right to carry a concealed weapon in public, as she concedes.[25] *Rene E.*, 583 F.3d at 12; *Dorr v. Weber*, 741 F.Supp.2d 993, 1004-5 (N.D. Iowa 2010) (because Second Amendment creates no right to carry concealed weapon, denial of permit for concealed weapon could not violate Second Amendment); *see also Heller*, 554 U.S. at 626 (noting with approval that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"); *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons.") (dictum); *United States v. Hart*, 726 F.Supp.2d 56, 60 (D.Mass. 2010) (Young, J.) (investigatory stop on suspicion of carrying concealed weapon did not violate Second Amendment).

Nor does the Second Amendment create a right to possess and carry large capacity firearms, like the Glock 19 with a 33-round extended magazine used to attack Congresswoman Giffords and others in Tucson, Arizona.[26] "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. It only protects the sorts of weapons in common use at the time the amendment was enacted, and does not limit the States' power to prohibit possession of assault rifles like the M-16 or other "dangerous and unusual" weapons. *Id.* at 627. Because firearms with "large capacity ammunition feeding devices"

---

[25]  *See* P's S.J. Memo (doc. no. 29) at 8-9.
[26]  *See, e.g.,* http://www.businessweek.com/magazine/content/11_04/b4212052185280.htm (last visited April 13, 2011).

are typically not needed for lawful purposes, were not in common use in the eighteenth century, and are unusually dangerous, the Second Amendment does not protect possession or carrying of such weapons. *Heller v. District of Columbia*, 698 F.Supp.2d 179, 193-95 (D.D.C. 2010) ("*Heller II*") (upholding new District of Columbia firearm licensing ordinance passed after Supreme Court decision), appeal pending, No. 10-7036 (D.C. Cir.); *accord United States v. Fincher*, 538 F.3d 868, 873-74 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 1369 (2009) (same for machine guns).

> **B.    Because Hightower Never Sought a License to Carry an Unconcealed, Regular Capacity Firearm, Counts I and III Are Not Ripe.**

Hightower has never sought nor been denied a Class B license.  As a result, her claims that the Second Amendment protects a right to carry firearms outside her home, and that the City has deprived Hightower of that right and therefore also violated substantive due process, are not yet ripe.[27]  A Class B license would allow Hightower to carry a regular firearm openly in public.  The additional rights under a Class A license to carry a concealed, large capacity firearm are not protected by the Second Amendment, as shown above.

The mere fact that Commissioner Davis revoked Hightower's unrestricted Class A license for providing an untruthful response, on a form that applies only to police officers, does not demonstrate that the City would find Hightower to be unsuitable to obtain a Class B license (or a restricted Class A license) now that she is a civilian with no departmental disciplinary charges pending.  "A 'claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Fall River v. Federal Energy Regulatory Comm'n*, 507 F.3d 1, 6-7 (1st Cir. 2007) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Hightower concedes that she might be able to obtain a license to carry other than an unrestricted Class A license, and testified that she has made no attempt to do so because she "would like to have my gun license and be able to carry it concealed."[28]  That means Hightower has not definitively been denied any right that she claims under the Second Amendment.  In another constitutional context, denial of a permit or approval to develop property does not give rise to a claim that the government has taken the property in the absence of a "final, definitive" decision

---

[27]    *Cf.* P's S.J. Memo (doc. no. 29), at 5-13, 18.

[28]    Hightower Dep. Tr. at 90-91; Commonwealth's SUMF ¶ 9.

depriving the owner of all economically viable use of the property:  no takings claim is ripe where the owner is denied approval of a relatively "grandiose" plan, but never seeks approval of a "less ambitious" one.  *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 347, 351-53 & n.9 (1986); *accord, e.g., Daddario v. Cape Cod Comm'n*, 425 Mass. 411, 414-17, *cert. denied*, 522 U.S 1036 (1997).  Hightower's claims are not ripe for much the same reason.  Unless and until the City definitively denies an application by Hightower for a Class B license to carry a non-large capacity firearm openly, her Second Amendment and substantive due process claims are not ripe.

## II.  EVEN IF THE SECOND AMENDMENT WERE IMPLICATED HERE, IT WOULD NOT FORBID THE COMMONWEALTH'S FIREARM LICENSING REQUIREMENTS.

Neither *Heller* nor *McDonald* holds that the Second Amendment protects any right to carry arms outside the home.  *See United States v. Masciandaro*, 2011 WL 1053618, *9, *16-*17 (4th Cir. March 24, 2011).  To the contrary, the Supreme Court made clear that "'the need for defense of self, family, and property is most acute' in the home," *McDonald*, 130 S.Ct. at 3036 (majority) (quoting *Heller*, 554 U.S. at 628), and held that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Heller*, 554 U.S. at 635.

"[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense."  *Masciandaro* at *12 (citing *Heller* at 626).  The Court should hesitate to extend the Supreme Court's Second Amendment jurisprudence in the manner suggested by Hightower.  As the Fourth Circuit warns:

> This is serious business.  We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights.  It is not far-fetched to think the *Heller* Court wished to leave open the possibility that such a danger would rise exponentially as one moved the right from the home to the public square.

*Id*. at *17.  The Court need not decide this issue, however, because Hightower's claim that the "suitable person" standard is unconstitutional on its face would fail even if it were ripe and even if the constitutional right to bear arms extended outside the home, as shown below.  *See id*.

"[A] party who mounts a facial challenge to a state statute" faces "a very heavy burden."  *McCullen*, 571 F.3d at 174.   Such a claim "will fail if a statute 'has a plainly legitimate sweep.'"  *Id*. (quoting *Washington State Grange*, 552 U.S. at 449).  Hightower's claim fails because she cannot

"establish that no set of circumstances exists under which the Act would be valid." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

### A.   Guns Are Not Speech:  Licensing Rules that Keep Firearms from Irresponsible Persons Are Not Unconstitutional "Prior Restraints."

Hightower is mistaken when she asserts that the First Amendment "prior restraint" doctrine applies to the Second Amendment right to keep and bear arms.[29]  Hightower concedes, as she must, "that the state may license the carrying of firearms" and "use licensing to keep firearms away from certain individuals" who cannot be trusted to use them responsibly.[30]  The Supreme Court has emphasized that neither *Heller* nor *McDonald* should be read to "cast doubt" on rules barring irresponsible persons from possessing or carrying firearms.  *McDonald*, 130 S.Ct. at 3047 (plurality).  "Nor do these decisions suggest any constitutional flaw in licensing and registration requirements; indeed, to the contrary, the relief issued in *Heller* was an order that the plaintiff, unless disqualified, be permitted to register his handgun and issued a license to carry it in his home."  *Lee*, 2011 WL 710997, *2 (citing *Heller*, 554 U.S. at 635).  In the First Amendment context, a law requiring a permit for a parade that will block public streets "is not to be reviewed as a 'prior restraint'" but instead is evaluated under the much more deferential "time-place-manner" doctrine.  *E.g., Sullivan v. City of Augusta*, 511 F.3d 16, 32 (1st Cir. 2007).  Similarly, requiring a license to carry a firearm is not an unconstitutional "prior restraint."

The many restrictions on gun ownership that the Supreme Court has said are presumptively constitutional would be unenforceable if one could possess or carry a gun without first obtaining a license or permit.  *Cf. Rene E.*, 583 F.3d at 12.  Hightower cannot cite a single case that has applied the First Amendment "prior restraint" doctrine to firearms claims under the Second Amendment.[31]  Although several courts have looked to First Amendment doctrine generally for guidance in evaluating Second Amendment claims, none has held that a firearm licensing requirement is subject to the same constitutional limitations as a "prior restraint" that forbids certain speech.  *Cf. United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85 ,89

---

[29]   *See* P's S.J. Memo (doc. no. 29), at 9-13 (discussing, *inter alia, Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969), and *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992)).
[30]   P's S.J. Memo (doc. no. 29) at 1, 18.
[31]   *See id.* at 10.

n.4 (3d Cir. 2010). Just as the Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment," *Salerno*, 481 U.S. at 745, so its "prior restraint" doctrine regarding laws or orders barring speech has little relevance to the Second Amendment. *Cf. United States v. Barton*, 633 F.3d 168, 172 n.3 (3d Cir. 2011) (declining to recognize overbreadth claim under Second Amendment).

Hightower is also mistaken in relying on First Amendment case law regarding ordinances that give local officials unfettered discretion to deny permission to use public fora for parades, solicitation, or other communicative activities. Even under the First Amendment those decisions do not apply outside traditional public fora, such as to advertising restrictions in a public transportation system. *See Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 94-95 (1st Cir. 2004) (distinguishing *Shuttlesworth* and *Forsyth*). "Excessive discretion and vagueness inquiries under the First Amendment are not static inquiries, impervious to context." *Id*. at 95. An ordinance that limits political speech, parades, or solicitation" in public fora "operates at the core of the First Amendment." *Frisby v. Schultz*, 487 U.S. 474, 479 (1988). In contrast, laws governing licenses to carry concealed weapons in public do not operate "[a]t the 'core' of the Second Amendment," which concerns "the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Barton*, 633 F.3d at 170-71 (quoting *Heller*, 554 U.S. at 635); *accord Masciandaro*, 2011 WL 1053618, *12; *Heller II*, 698 F.Supp.2d at 188.

Of course, even in public fora the freedom of speech must "be balanced against the government's legitimate interests in protecting public health and safety." *McCullen*, 571 F.3d at 175 (upholding 35-foot buffer zone around entrances to reproductive health care facilities). As shown below, the Massachusetts firearms licensing statutes help protect public safety by keeping guns way from unsuitable, irresponsible persons, and would pass muster under the Second Amendment.

**B.    At Most, Intermediate Scrutiny Would Apply.**

If the Second Amendment applied outside the home, and if Hightower were seeking a permit to carry an unconcealed, non-large capacity firearm, the challenged statute would be subject at most to intermediate scrutiny. *See Masciandaro*, 2011 WL 1053618, *11-*12 (applying intermediate scrutiny to firearm regulations that apply to law-abiding citizens). Hightower is wrong to invoke the

"compelling interest" standard of strict scrutiny.[32]  "[A] strict scrutiny standard of review would not square with the [Supreme Court's] references to 'presumptively lawful regulatory measures' such as laws prohibiting firearms possession by felons and the mentally ill. . . ."  *Heller II*, 698 F.Supp.2d at 188.  The kind of categorical disqualifications that the Supreme Court cites approvingly in *Heller* and *McDonald* apply with equal force inside the home, and laws barring felons, mentally ill persons, and other irresponsible persons from keeping a handgun in their home are not subject to strict scrutiny under the Second Amendment.  *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (intermediate scrutiny applies to federal statute barring possession while under domestic violence protection order; reversing dismissal of indictment for keeping firearm in home); *United States v. Williams*, 616 F.3d 685, 692-93 (7th Cir. 2010) (intermediate scrutiny applies to federal statute barring felons from possessing firearms; affirming conviction for keeping firearm in home); *see also*, *e.g.*, *Barton*, 633 F.3d at 174-75 (felons have no Second Amendment right to possess firearms for self-defense in their home); *Rene E.* 583 F.3d at 12 (complete ban on juvenile possession of handguns does not implicate Second Amendment).  The clear consensus is that intermediate scrutiny—but not strict scrutiny—is appropriate where the Second Amendment is implicated.  *Id.*; *see also United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc) (statute barring anyone convicted of a domestic violence misdemeanor from possessing a gun); *Marzzarella*, 614 F.3d at 97-98 (statute barring possession of unmarked firearm, even in one's home); *Heller II*, 698 F.Supp.2d at 188; *cf. Masciandaro*, 2011 WL 1053618, *11-*12 (4th Cir.) (statute barring possession of loaded firearm in national park).

"To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective."  *Clark v. Jeter*, 486 U.S. 456,461 (1988) (applying Equal Protection Clause); *accord Reese*, 627 F.3d at 802 (applying Second Amendment); *Williams*, 616 F.3d at 692 (same).  Under First Amendment doctrine, intermediate scrutiny of a time-place-manner restriction is also said to require a showing that a statute is "narrowly tailored."  *E.g., Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 15-16 (1st Cir. 2007).  But that does not mean the Legislature must adopt "the least restrictive or least intrusive means of

---

[32]  P's S.J. Memo (doc. no. 29), at 13, 19.

accomplishing the statute's legitimate governmental interest." *Id*. at 16. "Rather, narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively without it." *Id*. In determining whether a statute is narrowly tailored to further substantial governmental interests, the Court is "not at liberty to substitute [its] judgment for the reasonable conclusion of a legislative body." *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 520 U.S. 180, 212 (1997). Intermediate scrutiny does not make State laws subject to "a judge's agreement . . . concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *McCullen*, 571 F.3d at 179 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989)).

**C.    The Suitable Person Standard Serves a Substantial Interest, and Is Also Sufficiently Definite to Pass Master Under the Second Amendment.**

**1.    The "Suitable Person" Standard Is Substantially Related to the Strong Public Interest In Keeping Guns Away From Irresponsible Persons.**

"[T]he public interest at issue is one of the utmost importance, as the statute governing who may lawfully carry a firearm directly affects the physical safety of the citizenry." *Dupont v. Chief of Police of Pepperell*, 57 Mass. App. Ct. 690, 693-94 (2003). "The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons. Among the principal measures adopted in furtherance of that goal are the provisions of G.L. c. 140, § 131, governing the licensing of persons to carry firearms." *MacNutt v. Police Comm'r of Boston*, 30 Mass. App. Ct. 632, 635, *rev. denied*, 410 Mass. 1104 (1991) (citation omitted). "[A]n erroneous reinstatement of a firearms license to an unsuitable person" would undermine this important goal. *Police Comm'r of Boston v. Robinson*, 47 Mass. App. Ct. 767, 771 (1999).

The "suitable person" standard would satisfy intermediate scrutiny because it is substantially related to the Commonwealth's significant interest in keeping firearms out of the hands of irresponsible persons. *See Marzzarella*, 614 F.3d at 98 (federal law barring possession of firearm with altered or missing serial number passes intermediate scrutiny because it furthers "substantial or important interest" in keeping firearms out of the hands of "potentially irresponsible" persons); *see also Reese*, 627 F.3d at 802-804 & n.4 (federal law barring possession while under domestic violence protection order passes intermediate scrutiny because it is substantially related to important

government objective of preventing armed domestic abuse); *cf. Masciandaro*, 2011 WL 1053618, *15-*16 (ban on possessing loaded weapon in national park satisfies intermediate scrutiny, based on government's "substantial interest" in keeping park visitors safe).

   2.   **The Massachusetts "Suitable Person" Standard Is Not Unduly Vague and Does Not Permit Arbitrary or Capricious Licensing Decisions.**

As noted above, in the context of the Massachusetts firearm licensing statutes a "suitable person" is a person who is "sufficiently responsible . . . to be entrusted with a license to carry firearms." *Wetherbee*, 2001 WL 716915, *7; *accord Howard*, 59 Mass. App. Ct. at 901. "[C]haracter is a necessary qualification" for being a suitable person who can be trusted with carrying a firearm. *DeLuca v. Chief of Police of Newton*, 415 Mass. 155, 159-60 (1993); *see also Godfrey*, 35 Mass. App. Ct. at 43, 47-48 (affirming revocation on ground that licensee who refused to cooperate with investigation into gunshots fired into a school, a residence, and an automobile was no longer a "suitable person"). Thus, it was not arbitrary for Commissioner Davis to consider Hightower's capacity for veracity. *See Wetherbee*, 2001 WL 716915, *7 ("failure to provide accurate and complete responses to all questions on the application form" may demonstrate unsuitability for firearms license, whether applicant had "intended to conceal, or merely misunderstood the application form"); *cf. Coletti v. Department of State Police*, 64 Mass. App. Ct. 222, 226-27, *rev. denied*, 445 Mass. 1103 (2005) (affirming revocation of private detective license; misrepresentation on firearms license application helped show lack of "good moral character").

The "suitable person" standard is applied in an individualized manner by police chiefs with expertise in recognizing and analyzing the risk that an individual might not handle a deadly weapon with appropriate care, or even use it to engage in unlawful, violent acts. It was permissible for the Massachusetts Legislature to determine that categorical limitations on eligibility for firearms licenses cannot screen out all irresponsible persons. For example, although Massachusetts categorically disqualifies persons who are currently the subject of a domestic violence restraining order, *see* Mass. Gen. L. c. 140, § 131(d)(vi), someone who commits violent incidents of domestic abuse may remain unsuitable to be trusted with a firearm even if "the criminal charges and the restraining orders were subsequently dropped." *Ford v. Cristadoro*, 13 Mass. L. Rptr. 102, 2001 WL 543194, *3, (Mass. Super. Ct. 2001) (Connon, J.) (affirming revocation of firearm license on

this ground).  Similarly, persons convicted of a violent crime involving use or possession of a deadly weapon are categorically disqualified, *see* Mass. Gen. L. c. 140, § 131(d)(i), but others who commit violent acts may also not be a suitable person to be trusted with carrying a firearm.  *Roddy v. Leominster Dist. Ct.*, 15 Mass. L. Rptr. 658, 2003 WL 734431 (Mass. Super. Ct. 2003) (Hillman, J.), *aff'd*, 64 Mass. App. Ct. 1111 (2005) (affirming denial of firearm license renewal because applicant had a continuance without a finding on charge of assault with a deadly weapon).  Statutory categories are not always better than individualized decisions.  *Cf. The Florida Star v. B.J.F.*, 491 U.S. 524, 539-40 (1989) (though "categorical prohibitions" on publishing victims' names will violate First Amendment, orders based on "[m]ore individualized adjudication" are permissible); *Globe Newspaper Co. v. Superior Court of Norfolk County*, 457 U.S. 596, 607-608 (1982) (same for limiting media access to trials about sex offenses on victims younger than age 18).

Contrary to Hightower's assertions, the Massachusetts firearm statutes do *not* sanction the "arbitrary" denial or revocation of a license based on a police chief's "complete whim."[33]  If Hightower had appealed the order revoking her license and demonstrated that it was "arbitrary, capricious, or an abuse of discretion," her license would have been reinstated.  *See, e.g.*, *Lizotte v. Chief of Police of Fitchburg*, 2006 WL 1075596, civil action no. WOCV2001-00335 (Mass. Super. Ct. 2006) (Bryant, J.) (reversing suspension of license); *see also Howard*, 59 Mass. App. Ct. at 902 (legal standard for judicial review of firearm licensing decision).  Hightower does not and cannot claim that revocation of her Class A license violated Mass. Gen. L. c. 140, § 131.  If Hightower "wants to argue that [s]he is, in fact, a 'suitable person'" under that statute, her "proper recourse is with the state courts." *Rosenfeld v. Egy*, 346 F.3d 11, 18 n.4 (1st Cir. 2003).  But any such claim is now time-barred.[34]

## III.   THE REVOCATION OF HIGHTOWER'S CLASS A LICENSE DOES NOT "SHOCK THE CONSCIENCE" AND THUS CANNOT VIOLATE SUBSTANTIVE DUE PROCESS.

"[T]he threshold question" in analyzing Hightower's claim that executive action by the Boston Police Commissioner violated substantive due process "is 'whether the behavior of the

---

[33]   *Cf.* P's S.J. Memo (doc. no. 29), at 5, 11-12, 18, 20.
[34]   Hightower received the revocation notice "[o]n or about August 20, 2008."  Hightower Decl. ¶ 23.  She had to appeal within 90 days of receiving that notice, *see* Mass. Gen. L. c. 140, § 131(f), but did not file this lawsuit until 96 days later, on November 24, 2008.

governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 880 (1st Cir. 2010), *cert. denied*, 131 S.Ct. 1568 (2011) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). This "test is primarily concerned with 'violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Id.* at 881 (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)). "The conscience-shocking test is now an essential part of any substantive due process claim against a government actor." *Martinez v. Cui*, 608 F.3d 54, 65 (1st Cir. 2010).

A decision by a local police chief to deny an application by a police officer to renew her firearm license, because the officer is under investigation for possible misconduct and there are unresolved questions about whether the officer is still sufficiently responsible to be a suitable person to carry a firearm, does not "shock the conscience" as a matter of law. *Rosenfeld*, 346 F.3d at 12 & 15 (affirming summary judgment for police chief of Millis, Massachusetts, on this ground). Because *Rosenfeld* establishes that Hightower cannot meet the shock-the-conscience test, her claim that the revocation of her license violates substantive due process necessarily fails.[35]

"The shock-the-conscience test is an extremely demanding one, and challenges analyzed under it rarely succeed." *Gonzalez-Fuentes*, 607 F.3d at 885. Of course, "[e]ven executive action that does shock the conscience will still not infringe substantive due process unless it also deprives an individual of a 'protected interest in life, liberty, or property.'" *Id.* at 880 n.13 (quoting *Aguilar v. U.S. Immigration & Customs Enf.*, 510 F.3d 1, 23 (1st Cir. 2007)). "Here, because . . . the challenged executive action is not conscience-shocking," the Court need not decide whether Hightower has "a liberty interest so fundamental as to be protected by substantive due process." *Id.*[36]

The denial or revocation of a license or permit, "even if arbitrary" or based on "animus," is not "the kind of conscience-shocking abuse of governmental power required for showing a

---

[35] *Cf.* P's S.J. Memo (document no. 29), at 18.

[36] "Substantive due process protects only those interests that implicate one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Gonzalez-Fuentes*, 607 F.3d at 880 n.13 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

substantive due process violation." *Collins v. Nuzzo*, 244 F.3d 246, 250-51 (1st Cir. 2001); *accord, e.g.*, *Amsden v. Moran*, 904 F.2d 748, 757-58 (1st Cir. 1990).  Hightower is mistaken when she asserts that she can establish a substantive due process claim merely by proving that "arbitrary action by the government" violated a protected liberty interest.[37]  Hightower relies on an older First Circuit decision, *Newman v. Massachusetts*, 884 F.2d 19, 24 (1st Cir. 1989).  But that reading of older precedent "has been superseded by Supreme Court caselaw" beginning with *Lewis* in 1998, "and has been rejected" by the First Circuit.  *Martinez*, 608 F.3d at 64-65.  "Only conscience-shocking behavior can be sufficiently arbitrary and egregious to be of constitutional significance" under substantive due process.  *Id*. at 65.

## IV.   THE POST-DEPRIVATION JUDICIAL REVIEW AVAILABLE TO, BUT NEVER SOUGHT BY, HIGHTOWER SATISFIES PROCEDURAL DUE PROCESS.

Given the public safety interest at stake in gun-licensing decisions, procedural due process requires only "a meaningful opportunity to be heard **after** a denial or revocation."  *Kuck v. Danaher*, 600 F.3d 159, 165 (2d Cir. 2010) (emphasis added) (denial of permit to carry firearm); *see also Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) (same for revocation of license to sell firearms).  Hightower could have sought judicial review immediately after her license was revoked.  *See* Mass. Gen. L. c. 140, § 131(f).  She did not exercise that right.[38]

Because the Commonwealth has a "paramount interest" in preserving public safety by keeping firearms away from irresponsible persons, the availability of such post-deprivation relief satisfies the requirements of due process.  *See Mackey v. Montrym*, 443 U.S. 1, 17-19 (1979) (Massachusetts law mandating summary revocation of driver's license for refusing breathalyzer test, with opportunity for immediate post-revocation hearing, satisfies due process).  "Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action" with no pre-deprivation hearing.  *Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981) (law allowing surface mining cessation orders).

Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (state employee not entitled to notice

---

[37]   P's S.J. Memo (doc. no. 29) at 18.
[38]   Hightower Dep. Tr. at 93; Commonwealth's SUMF ¶ 5.

and hearing before suspension without pay due to arrest on drug charges) (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)).  Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  In evaluating the adequacy of the procedures employed, the Court must balance "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mackey*, 443 U.S. at 10-11 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Hightower's insistence that Commissioner Davis erred in revoking her license has no bearing on whether the statutory scheme violates procedural due process.[39]  "Whether the deprivation (e.g., license revocation) was itself erroneous is beside the procedural due process point." *Amsden*, 904 F.2d at 753.  "The relevant inquiry is not whether a [revocation] order should have been issued in a particular case, but whether the statutory procedure itself is incapable of affording due process." *Hodel*, 452 U.S. at 302.  "The possibility of administrative error inheres in any regulatory program; statutory programs authorizing emergency administrative action prior to a hearing are no exception." *Id.*  "Discretion of any official may be abused.  Yet it is not a requirement of due process that there be judicial inquiry before discretion can be exercised." *Id.* (quoting *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599 (1950)).  "In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly.  Quick action may turn out to be wrongful action, but due process requires only a postdeprivation opportunity to establish the error." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006) (restaurant closure for health code violations).

The admissibility of reliable hearsay would also not violate due process.[40]  "[N]othing in the due process clause precludes the use of hearsay evidence in administrative proceedings." *Toribio-Chavez v. Holder*, 611 F.3d 57, 66 (1st Cir. 2010) (Fifth Amendment); *accord Beauchamp v. de*

---

[39]  *Cf.* P's S.J. Memo (doc no. 29) at 16-17.
[40]  *Cf.* P's S.J. Memo (doc. no. 29) at 4-5.

*Abadia*, 779 F.2d 773, 775-76 (1st Cir. 1985) (admission of hearsay in state administrative proceeding to revoke license to practice medicine did not violate Fourteenth Amendment).

**V.     THE "SUITABLE PERSON" STANDARD SATISFIES THE EQUAL PROTECTION CLAUSE.**

Hightower's equal protection claim adds nothing to her case:  her argument that the Equal Protection Clause requires strict scrutiny because "the Second Amendment secures a fundamental right" is without merit.[41]  It would be surpassing strange to subject the Massachusetts firearm licensing laws to strict scrutiny under the Equal Protection Clause when they would be subject at most to intermediate scrutiny under the Second Amendment, if the constitutional right to keep and bear arms were implicated here.

Where a provision of the Bill of Rights is incorporated into the Fourteenth Amendment and thus is applicable to the States, the Equal Protection Clause does not "erect a separate and distinct framework for analyzing claims" that the right protected by the Bill of Rights has been violated. *Eulitt ex rel. Eulitt v. Maine, Dept. of Educ.*, 386 F.3d 344, 354 (1st Cir. 2004) (rejecting claim that Equal Protection Clause protects free exercise of religion more broadly than does the Free Exercise Clause of the First Amendment).  To the contrary, the scope of the constitutional right is determined by the Bill of Rights provision, and "rational basis scrutiny applies to any further equal protection inquiry."  *Id.*; *accord, e.g., Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004) (same re free exercise claim); *Wirzburger v. Galvin*, 412 F.3d 271, 282-83 (1st Cir. 2005), *cert. denied*, 546 U.S. 1150 (2006) (same); *McGuire v. Reilly*, 260 F.3d 36, 49-50 (1st Cir. 2001) (same re free speech claim). That a constitutional right is deemed sufficiently important to be incorporated into the Fourteenth Amendment's Due Process Clause does not mean that a classification alleged to infringe that right is subject to "a standard of scrutiny stricter than the traditional rational-basis test" under the Equal Protection Clause.  *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) (free exercise claim).

So long as the challenged classification comports with the provision incorporated from the Bill of Rights, it does not interfere with a fundamental right and thus will also satisfy the requirements of equal protection.  *Eulitt*, 386 F.3d at 354; *McGuire*, 260 F.3d at 49-50; *see also Wirzburger*, 412 F.3d at 282-83.  Thus, if the statutory scheme comports with the Second

---

[41]     P's S.J. Memo (doc. no. 29) at 18-19.

Amendment—which it does, as shown at pages 9-15 above—it will also pass muster under the Equal Protection Clause.  The Commonwealth has a rational basis for wanting "to limit access to deadly weapons by irresponsible persons," which is the aim of Mass. Gen. L. c. 140, § 131.  *See MacNutt*, 30 Mass. App. Ct. at 635.  That public safety interest is substantial, and the "suitable person" standard reasonably furthers that interest.

Hightower cannot claim that equal protection was violated merely because her license to carry a firearm was revoked when others were not.  *See, e.g., Rosenfeld*, 346 F.3d at 15.  "There is an obvious danger to opening up local permitting decisions to detailed federal judicial scrutiny under equal protection rubric.  If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court."  *Id.* (quoting *Néstor Colón Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 44-45 (1st Cir. 1992)).  Thus, in permit denial or revocation cases, "[a]n equal protection claim is found only upon a showing of a 'gross abuse of power, invidious discrimination, or fundamentally unfair procedures' or some sort of unjustified disparate treatment with respect to similarly situated applicants."  *Collins*, 244 F.3d at 251 (license to operate used car lot) (quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.1982)).  Hightower makes no such claim here.

### Conclusion.

The Court should not reach the merits of plaintiff's Second Amendment and Substantive Due Process claims, but should instead dismiss them without prejudice because they are not ripe.  Alternatively, if the Court were to reach the merits of these claims, it should hold that the "suitable person" standard is constitutional and enter judgment in defendants' favor.

The Court should enter judgment in defendants' favor on the Procedural Due Process and Equal Protection claims.  Hightower could have sought judicial review of the license revocation; the availability of such post-deprivation judicial review satisfies procedural due process.  Finally, the Massachusetts Legislature's distinction between suitable and unsuitable persons does not violate Equal Protection, either under rational basis review or under intermediate scrutiny.

MARTHA COAKLEY
*ATTORNEY GENERAL OF MASSACHUSETTS*

  /s/ Kenneth W. Salinger   .
Kenneth W. Salinger (BBO # 556967)
Assistant Attorney General, Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617.963.2075
ken.salinger@state.ma.us

April 21, 2011

**Certificate of Service**

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those indicated on the NEF as non registered participants on or before April 21, 2011.

  /s/ Kenneth W. Salinger   .