UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11955-DJC

**STACEY HIGHTOWER,**
    **Plaintiff**

**v.**

**CITY OF BOSTON and BOSTON
POLICE COMMISSIONER
EDWARD DAVIS**
    **Defendants**

### DEFENDANTS, CITY OF BOSTON'S AND BOSTON POLICE COMMISSIONER EDWARD DAVIS'S LOCAL RULE 56.1 RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS[1] *AND* DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to L.R. 56.1, Defendants, City of Boston ("City") and Boston Police Commissioner Edward Davis ("Commissioner Davis") (collectively, the "City Defendants") submit the following response to Plaintiff, Stacey Hightower's statement of undisputed material facts. The Defendants state that there is no genuine dispute of material fact to be tried and the Defendants are entitled to summary judgment as a matter of law.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF MATERIAL FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. For purposes of Plaintiff's summary judgment only, Defendants do not dispute that

---

[1] All of the supporting documentation attached hereto are true and accurate copies. *See* Affidavit of Lisa Maki, attached hereto as Exhibit A.

        during Ms. Hightower's service with the Boston police department, Ms. Hightower arrested murderers and members of drug cartels, intercepted narcotic shipments, and physically subdued numerous violent criminals.

9. Undisputed.

10. This paragraph is not material to the Plaintiff's motion for summary judgment and should not be considered in resolving Plaintiff's instant motion. For purposes of Plaintiff's summary judgment only, Defendants do not dispute that Ms. Hightower was physically injured multiple times as a result of altercations with violent felons.

11. For purposes of Plaintiff's summary judgment only, Defendants do not dispute the statement that the Dorchester neighborhood which Ms. Hightower resides is a high crime area within the City of Boston.

12. This statement is genuinely disputed on the grounds that the facts essential to justify Defendants' opposition are unavailable at this time.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Disputed. The Firearm Bureau Record application for renewal form requests information regarding an applicant's criminal history. *See* Commonwealth of Massachusetts Firearm Record Bureau Application for Renewal of Firearm License, attached hereto as Exhibit L. The Boston Police Department Form GS-13 requests information regarding internal affairs investigations. *See* Boston Police Department Firearms Work Sheet Form GS-13, attached hereto as Exhibit K.

21. Disputed. Plaintiff's Exhibit E consists of an excerpt from a Boston police patrolman union collective bargaining agreement with the City of Boston to which it is unknown whether Ms. Hightower was a member of the union under this specific contract because the excerpt does not identify the years in which the contract was effective and Ms. Hightower has not been a union member since 2008.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Disputed. Hightower was ordered to surrender her firearm without delay in accordance with Massachusetts General Laws, Chapter 140, Section 129D. *See* August 20, 2008 letter from Boston Police Commissioner to Stacey Hightower, attached hereto as Exhibit M.

29. Disputed to the extent that Hightower states she was unaware that the "Police Commissioner's Personnel Order," signed by Defendant Davis and dated August 18, 2008, was placed in her personnel file. *See* May 19, 2009 Decision of the Massachusetts Civil Service Commission, attached hereto as Exhibit I.

30. Disputed. Hightower resigned from the Boston police department prior to a hearing on the charges pending against her stemming from a 2004 internal affairs investigation. *See* ¶ 8, Affidavit of Kenneth Fong, attached hereto as Exhibit D. Hightower knew of the pending charges because her attorney was still in the process of negotiating settlement with the Boston Police Department when she resigned. *See* Deposition of Stacey Hightower, attached hereto as Exhibit G, p. 41:1-24; 42:1-24; 43:1-24; 44:1-24; 45:1-24; 46:1-24; 47:1-12; *see also* October 10, 2007 letter from Richard Bardi to Sheila Gallagher, attached hereto as Exhibit H.

31. Disputed. The Defendants affirmatively claim that the pending investigation against Hightower at the time she applied to renew her Class A license was for the July 28, 2004 incident. *See* August 18, 2008 Police Commissioner's Personnel Order, attached hereto as Exhibit P; *see also* Affidavit of Kenneth Fong, attached hereto as Exhibit D, ¶ 8.

32. Disputed. Hightower unsuccessfully tried to remove the pending charges Personnel Order from her personnel file through a civil service commission appeal. Exhibit I.

33. Undisputed.

34. Statement of law not fact.

35. Statement of law not fact.

36. Undisputed to the extent that Hightower may be granted a Class A license should she

37. Undisputed to the extent that as of July 2008, a search of her criminal history did not result in any disqualifications. *See* Application Results from Firearm Bureau, attached hereto as Exhibit R. Disputed to the extent that Hightower asserts she has no drug history on the grounds that the facts essential to justify Defendants' opposition are unavailable at this time.

38. Undisputed.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

    **I.**    **The Plaintiff's Application For Renewal As A Sworn Police Officer**

39. In 2008, Hightower was a Boston Police Officer. *See* Exhibit P.

40. A Boston police officer must have a Class A License to Carry in order to carry concealed a non-Boston police department issued firearm. Exhibit C, ¶ 9. If a sworn Boston police officer does not wish to carry a non-Boston police department firearm, he or she is not required to have a firearm license or firearms identification card. *Id*.

41. In addition to her Boston police department issued firearm, Hightower owned a five-round revolver as her personal firearm. Exhibit G, p. 89:7-17. A five-round revolver is considered a non-large capacity firearm. *See* M.G.L. c. 140, § 121; Exhibit G, p. 89:9-12.

42. In order to possess her personal five-round revolver in her home for home protection, Hightower needed either a Class A or Class B License. Exhibit C, ¶ 7; *see* M.G.L. c. 140, § 131. Hightower could possess a rifle or shotgun in her home for home protection with a firearm identification card. M.G.L. c. 140, § 129B.

43. In order to carry her personal five-round revolver in a concealed manner in Massachusetts, Hightower needed an unrestricted Class A License pursuant to M.G.L. c. 140, § 131. Exhibit C, ¶ 7.

44. In 2000, approximately two years after becoming a Boston police officer, Hightower was granted an Unrestricted Class A License to Carry. *See* Firearm License history for Stacey Hightower, attached hereto as Exhibit J. Hightower wanted a second firearm, in addition to her Boston police department-issued firearm because she felt it would require less paperwork in the event she discharged her personal firearm as opposed to her Boston police department firearm. Exhibit G, p. 87:12-24; 88:1-24; 89:1-2. If Hightower discharged her department-issued firearm, it would be taken

45. away while a Boston police department investigation was undertaken and she would not be able to work details or overtime. Exhibit G. p. 88:3-24; 89:1-2.

45. The unrestricted Class A License to Carry allowed Stacey Hightower to carry her personal revolver in a concealed fashion outside of her home in addition to storing it at her home for home protection. Exhibit C, ¶ 7; M.G.L. c. 140 § 131(a). She was required to renew that license every six years. *See* Exhibit J.

46. In March 2008, Stacey Hightower's unrestricted Class A License to Carry lapsed. Exhibit J. She filed her renewal form in July 2008 four months after her license had originally expired. Exhibit J; Exhibit L.

47. The Boston police department requires all sworn Boston police officers to fill out a Form GS-13 when applying for or renewing a license to carry a personal, non-Boston police department issued firearm. Exhibit C, ¶ 10. The Form G S 13 is required an addition to the required Massachusetts firearm license application form. *Id*. The Form GS-13 inquires as to whether an officer has "pending charges" against him or her. Exhibit K.

48. The question as to "pending charges" on the Form GS-13 asks whether a Boston police officer has unresolved internal affairs complaints against them. Exhibit C, ¶ 11.

49. If a sworn police officer applicant does not provide truthful information on their state renewal form or their "Form G S 13," the licensing authority can issue a denial, suspension, or revocation of the applicant's firearms license. Exhibit C, ¶ 15.

50. Upon a determination that Ms. Hightower had untruthfully answered "no" to the question asking whether there were pending charges against her on the "Form G S 13," the Licensing Unit sent her a letter revoking her license based on her untruthful answer. Exhibit C, ¶ 14; *see also* August 20, 2008 letter from Police Commissioner to Stacey Hightower, attached hereto as Exhibit M.

51. The letter ordered Ms. Hightower to turn over her firearm license, firearm, and ammunition without delay to her district police station. Exhibit M.

52. Hightower turned over her license to carry and her firearm and ammunition to the Boston police department on August 29, 2008. *See* Boston Police Department incident report, attached hereto as Exhibit N.

53. Hightower never contacted the Boston police department Licensing Unit to inquire as to what question she had answered untruthfully or to determine whether she in fact had answered it untruthfully. Exhibit C, G, p. 73:17-24; 74:1-24; p. 75:1.

54. Hightower has never appealed the revocation of her unrestricted license to carry pursuant to her right of appeal under Massachusetts General Laws, Chapter 140, Section 131.  Exhibit C, ¶ 17; Exhibit G, p. 93:3-5.

55. Hightower has never reapplied for a Class A License to Carry.  Exhibit C, ¶ 18; Exhibit G, p. 89:18-24; 90:1-24; 91:1-2; 92:11-17; 93:6-11.  As of the effective date of her resignation, Hightower would not be required to fill out the "Form G S 13," and thus, she would not have to answer whether she has pending internal affairs charges against her.  Exhibit C, ¶ 10.

56. Hightower has never applied for a firearms identification card which allows for the carrying, possession, and storage of firearms (rifles or shotguns) within the home. Exhibit G, p. 85:15, 94:16-23.

57. Hightower's reason for not reapplying for her license to carry is because it was revoked by the Boston police department based on their determination that she untruthfully answered the "Form G S 13."  Exhibit G, p. 89:18-24; 90:1-24; 91:1-24; 92:1-24; 93:1-24; 94:1-24; 95:1-2.  Plaintiff seeks only a license to carry her firearm concealed.  Exhibit G, p. 91: 4-10; 92:8-15.

58. Plaintiff's reasoning for wanting an unrestricted Class A license is because she has arrested a lot of criminals and feels that she needs to be protected from those individuals who may recognize her.  Exhibit G., p. 91:5-17.  Plaintiff also feels she needs an unrestricted Class A license because her home had been previously broken into and she lives in a bad neighborhood.  Exhibit G, p. 91:4-24; p. 92:11-24; p. 93:1-2.

59. Plaintiff still currently resides in Boston.  Exhibit G, p. 92:1-2.

60. Plaintiff possessed an unrestricted Class A license to carry from approximately March 2, 2000 until August 29, 2008.  Exhibit J.

## II. The Plaintiff's Relevant Internal Affairs History

61. The Boston police department conducted an investigation into a complaint made to internal affairs regarding an incident that occurred on July 28, 2004 incident in which the Complainant alleged he was assaulted by a Boston police officer at the booking desk of a police station.  *See* Exhibit G, p. 29:7-24; 30:1-24; 31:1-11; 32:2-16, 22-24; 33:1-12; *see also* Exhibit D, ¶ 3-5

62. As a result, the Boston police internal affairs department conducted an extensive investigation which included interviewing officers who were involved in the arrest of the Complainant.  Exhibit D, ¶ 5.

63. On or about May 18, 2005, Hightower was ordered to appear at Internal Affairs to give an interview regarding the July 28, 2004 incident.  *See* May 18, 2005,

6

      Memorandum from Dep. Sup. Donahue to Captain Hasson, attached hereto as Exhibit E.  Hightower gave an interview at Internal Affairs on or about May 26, 2005.  *See* May 26, 2005 Memorandum from Sgt. Duggan to Hightower, attached hereto as Exhibit B.

64. Hightower was interviewed by internal affairs as part of the investigation because she transported the Complainant from the scene of where the car chase ended to the police station.  Exhibit G, p 31:21-24; 32:1-10; Exhibit D, ¶¶ 3-6.  Based on the answers she gave in her interview, internal affairs recommended that she be found in violation of Boston Police Department Rules 102, § 27 (abuse of process withholding information) Rule 103A, § 28 (patrol officers assigned to wagon) and Rule 102, § 4 (neglect of duty).  *See* Exhibit E, G, p. 34:21-24; 35:1-24; 36:1-24; 37; Exhibit D, ¶6.  The internal affairs complaint stemming from the 2004 incident was amended to sustain rules violations against Hightower based on the information learned during her interview.  *See* Amended Internal Affairs Complaint, attached hereto as Exhibit Q.  On October 17, 2005, former Boston Police Commissioner, Kathleen O'Toole was notified of the sustained rules violations found against Hightower.  *See* October 17, 2005, Internal Affairs Recommendations from Dep. Sup. Donahue to Commissioner O'Toole, attached hereto as Exhibit U.

65. On November 4, 2005, Ms. Hightower received notice that as a result of her interview from the July 28, 2004 investigation, she was found to be in violation of Boston police department rules 102 §§ 4, 27, 103A, § 28.  Exhibit F, G: 34:21-24; 35:1-24; 36:1-17.

66. Plaintiff appealed those findings through her union representative and had yet to come to a resolution with the Boston police department as to the discipline that would be imposed for those rules violations when she submitted her resignation from the Boston police department.  Exhibit G, p. 37:24; 38:1-24; 39:1-24; 40:1-24; 41:1-24; 42:1-24; 43:1-24; 44:1-24; 45:1-24; 46:1-24; 47:1-12.  P

67. Hightower knew that the discipline stemming from the rules violations found against her in 2005 had not been resolved at the time of her resignation.  Exhibit G p. 39:2-24; 40:1-24; 41:1-24; 42:1-24; 43:1-24; 44:1-24; 45:1-24; 46:1-24; 47:1-12; Exhibit H.

68. On or about November 4, 2005, Hightower was notified that internal affairs had sustained charges against her stemming from the July 28, 2004 incident.  Hightower was found to be in violation of Boston police department rules Boston Police Department Rules 102, § 27 (abuse of process withholding information) Rule 103A, § 28 (patrol officers assigned to wagon) and Rule 102, § 4 (neglect of duty) in connection with an internal affairs investigation (IAD Case No. 135-04).

69. Hightower appealed the Boston police department's findings that she had violated Rules 102, §§ 4, 27, and 103A § 28 through a union representative.  Exhibit G, p. 39:2-24.

70. Hightower also hired an attorney who engaged in settlement negotiations with the Boston police department Legal Advisor's Office in connection to the sustained rules violations found against her as part of the investigation into the July 28, 2004 incident. (IAD Case No. 135-04). Exhibit G, p. 41:18-24; 42:1-24; 43:1-24; 44:1-24; 45:1-24; 46:1-24; 47:1-12; Exhibit H. Although Hightower does not remember the specifics of the settlement proposal, she remembers discussing settlement with her attorney regarding the incident and was aware that the incident was not resolved at the time she resigned. Exhibit G, p. 41:18-24; 42:1-24; 43:1-24; 44:1-24; 45:1-24; 46:1-24; 47:1-12.

71. In July 2008, when Hightower submitted her resignation from the Boston police department she had yet to resolve the rules violations and the subsequent discipline from the Boston police department stemming from the excessive force investigation (IAD Case No. 135-04). Exhibit G, p. 41:18-24; 42:1-24; 43:1-24; 44:1-24; 45:1-24; 46:1-24; 47:1-12; *see also* Exhibit D, ¶ 8.

### III.   The Revocation of Plaintiff's Unrestricted Class A License

72. Hightower's application for renewal for an unrestricted Class A License to Carry was approved on or about July 30, 2008 by the Boston police department. Exhibit K. Hightower's renewal was issued on August 4, 2008. *See* Unrestricted Class A license of Stacey Hightower, attached hereto as Exhibit S.

73. In August 2008, Hightower resigned from the Boston Police Department. Exhibit G, p. 49:7-13; Exhibit P. After Hightower resigned, the Commissioner posted a Personnel Order which stated that Hightower had resigned with "charges pending." Exhibit C, ¶ 13; Exhibit P.

74. Upon seeing the Commissioner's Personnel Order, the Commander of the Firearms Licensing Unit, Lieutenant Detective Mark Harrington, spoke with internal affairs and confirmed that Hightower indeed had charges pending at the time she renewed her firearms license in July 2008. Exhibit C, ¶¶ 13, 14.

75. Upon learning that Hightower had untruthfully responded to the "pending charges" question on the Form GS-13, Lieutenant Detective Mark Harrington revoked Hightower's unrestricted Class A License to Carry. Exhibit C, ¶ 14; Exhibit M.

76. The revocation of Hightower's Class A License to Carry was based on her untruthful answer on Form GS-13. Exhibit C, ¶ 14; Exhibit M.

77. The Licensing Commander sent Hightower a revocation letter on April 20, 2008 informing her that her unrestricted Class A license had been revoked based on her untruthful response on her application form. Exhibit M. Plaintiff was ordered to surrender her firearm license and firearm without delay. *Id*. Hightower was also informed of her ninety day right to appeal the revocation pursuant to M.G.L. c. 140, §

131(f). *Id.* Hightower surrendered her firearm and firearm license on August 29, 2008. Exhibit N.

78. If Hightower were to reapply for an unrestricted Class A license she would not be required to submit a Form GS-13 as she is no longer a Boston police officer. Exhibit C, ¶ 10. If Hightower were to reapply for an unrestricted Class A license, the Licensing Commander would make a decision based on her needs and the interests of the Boston Police Department in issuing her an unrestricted Class A License. Exhibit C, ¶ 19. Assuming Hightower has no statutory disqualifications, Hightower would receive a restricted Class A license. *Id.*

### IV.     Firearm Statistics Within the City of Boston

79. From 2005 until March 1, 2011, 1,876 shootings have occurred within the City of Boston. *See* Affidavit of Clifford Goodband, attached hereto as Exhibit T and attached March 1, 2011 Boston Police Department Regional Intelligence Center gun statistics spreadsheet. Of the 1,876 shootings that have occurred in Boston since 2005, 1,402 have occurred in Dorchester, Roxbury, and Mattapan. Exhibit T, attached Boston Police Department map of shootings.

80. As of February, 2011 3,798 City of Boston residents possessed Class A licenses to Carry. *See* ¶ 8(a), Affidavit of Jason Guida, Esq., attached hereto as Exhibit O. Of those 3,798 licensees, 58 % or 2,239 individuals possessed unrestricted Class A firearm licenses, which allows the licensee to carry a concealed firearm in public. *Id.* at ¶ 8(b).

81. From 2007-2011, fifty firearm licenses were revoked by the Boston Police Department. Exhibit O, ¶ 6.

82. The Boston police department issues Class A license to carry large-capacity firearms either as "unrestricted" or with restrictions. An unrestricted Class A license allows an individual to carry a concealed firearm on their person for any purpose. A Class A license with restrictions generally allows individuals to carry a firearm outside the home for sport and target practice or for employment purposes, such as traveling to and from employment as a security officer. Class A restricted and unrestricted licenses both allow for possession of a large-capacity firearm for home protection. Exhibit C, ¶ 7.

83. A Class A restricted license to carry for sport and target practice requires the individual to transport their firearm unloaded in a locked box, and when necessary, in the trunk of their vehicle. Exhibit C, ¶ 7.

Respectfully submitted,
DEFENDANTS, CITY OF BOSTON and BOSTON POLICE COMMISSIONER EDWARD DAVIS
By their attorneys:

William F. Sinnott
CORPORATION COUNSEL

**CERTIFICATE OF SERVICE**

I, Lisa Skehill Maki, hereby certify that on this date I served a copy of the foregoing documents upon plaintiff's counsel, Alan Gura and Chester Darling, and counsel for the Commonwealth of Massachusetts, Ken Salinger, by electronic filing and by postage prepaid, first class, U.S. Mail.

| | |
|---|---|
| <u>April 22, 2011</u> | <u>/s/ Lisa Skehill Maki</u> |
| Date | Lisa Skehill Maki |

<u>/s/ Lisa Skehill Maki</u>
Lisa Skehill Maki, BBO No. 675344
Ian D. Prior, BBO NO.
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4022 (Maki)
(617) 635-4017 (Prior)
Lisa.Maki@cityofboston.gov
Ian.Prior@cityofboston.gov