**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
|                                       )
STACEY HIGHTOWER,                        )  C.A. No. 08-CV-11955-DJC
                                         )
       Plaintiff,        )
                                         )
      v.                )
                                         )
CITY OF BOSTON, et al.,                  )
                                         )
       Defendants.       )
_____  )

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
COMMONWEALTH OF MASSACHUSETTS' MOTION FOR SUMMARY JUDGMENT
AND IN REPLY TO OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION

     Comes now the Plaintiff, Stacey Hightower, by and through undersigned counsel, and

submit her memorandum of points in authorities in opposition to Defendant Commonwealth of

Massachusetts Motion for Summary Judgment, and in Reply to Opposition to Plaintiff's Motion

for Summary Judgment.

     Dated: May 6, 2011             Respectfully submitted,

     Chester Darling (BBO # 114320)     Alan Gura
     9 Mayflower Drive            Gura & Possessky, PLLC
     Andover, MA 01810          101 N. Columbus Street, Suite 405
     978.475.2520               Alexandria, VA 22314
     Fax 978.475.1741           703.835.9085/Fax 703.997.7665


By:  /s/ Chester Darling      By:  /s/ Alan Gura
     Chester Darling             Alan Gura

                              Attorneys for Plaintiff

TABLE OF CONTENTS

TABLE OF AUTHORITIES. ...................................................................................................... ii

PRELIMINARY STATEMENT. .............................................................................................. 1

STATEMENT OF FACTS. ...................................................................................................... 1

SUMMARY OF ARGUMENT. ............................................................................................... 4

ARGUMENT. ............................................................................................................................ 5

I.     OVERBREADTH IS A SECOND AMENDMENT DOCTRINE. ....................... 5

II.    THE SUITABILITY STANDARD IS MOST PRACTICALLY ANALYZED AS A PRIOR RESTRAINT UNDER EXISTING FRAMEWORKS. ................................................................................. 7

III.   RESTRICTING FUNDAMENTAL RIGHTS TO "SUITABLE PEOPLE" VIOLATES THE EQUAL PROTECTION CLAUSE. ........................................ 13

IV.   THE SUITABLE PERSON STANDARD FAILS MEANS-ENDS SCRUTINY. .................................................................................................. 15

V.    HIGHTOWER WAS DEPRIVED OF DUE PROCESS. .................................... 16

    A.    Hightower Was Denied Procedural Due Process. ..................................... 17

    B.    Hightower Was Denied Substantive Due Process. .................................... 18

CONCLUSION. ....................................................................................................................... 20

TABLE OF AUTHORITIES

Cases

*Bayside Enterprises, Inc.* v. *Carson*,
    450 F. Supp. 696 (M.D. Fla. 1978). .................................................................. 11

*Beauchamp* v. *De Abadia*,
    779 F.2d 773 (1st Cir. 1985) .......................................................................... 18

*Broadway Books, Inc.* v. *Roberts*,
    642 F. Supp. 486 (E.D.Tenn. 1986). ............................................................. 11

*Chief of Police* v. *Moyer*,
    16 Mass. App. Ct. 543, 453 N.E.2d 461 (1981). ........................................... 17

*City of Lakewood* v. *Plain Dealer Publishing Co.*,
    486 U.S. 750 (1988). ..................................................................................... 10

*Collins* v. *Nuzzo*,
    244 F.3d 246 (1st Cir. 2001). ........................................................................ 14

*Commonwealth* v. *Blanding*,
    20 Mass. 304 (1825) . ...................................................................................... 8

*County of Sacramento* v. *Lewis*,
    523 U.S. 833 (1998). ...................................................................................... 19

*DePoutot* v. *Raffaelly*,
    424 F.3d 112 (1st Cir.2005). .................................................................... 18, 19

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). ........................................................................................ 2

*Elam* v. *Bolling*,
    53 F. Supp. 2d 854 (W.D.Va. 1999). ............................................................. 11

*Engquist* v. *Or. Dep't of Agric.*,
    553 U.S. 591 (2008) ....................................................................................... 13

*Freedman* v. *Maryland*,
    380 U.S. 51 (1965). ........................................................................................ 18

*Genusa* v. *Peoria*,
    619 F.2d 1203 (7th Cir. 1980). ...................................................................... 11

ii

*Godfrey* v. *Chief of Police*,
    35 Mass. App. Ct. 42, 616 N.E.2d 485 (1993). ....................................... 13, 17

*Heller* v. *District of Columbia*,
    698 F. Supp. 2d 179 (D.D.C. 2010) ....................................... passim

*Howard* v. *Chief of Police*,
    59 Mass. App. Ct. 901,794 N.E.2d 604 (2003). ............................................. 12

*Johnson* v. *Robison*,
    415 U.S. 361 (1974)........................................................................ 14

*Lizotte* v. *Chief of Police*,
    2006 Mass. Super. LEXIS 171 (2006). .............................................. 12

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010)......................................................... passim

*MD II Entertainment* v. *City of Dallas*,
    28 F.3d 492 (5th Cir. 1994). ............................................... 11

*Morrissey* v. *Brewer*,
    408 U.S. 471 (1972)......................................................... 17

*N.J. Envtl. Fed'n* v. *Wayne Twp.*,
    310 F. Supp. 2d 681 (D.N.J. 2004). ..................................... 11

*Ohio Citizen Action* v. *City of Mentor-On-The-Lake*,
    272 F. Supp. 2d 671 (N.D. Ohio 2003)................................... 11

*Ohio Citizen Action* v. *City of Seven Hills*,
    35 F. Supp. 2d 575 (N.D. Ohio 1999)..................................... 11

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007) ......................................... 9

*Planned Parenthood of Southeastern Pa.* v. *Casey*,
    505 U.S. 833 (1992)......................................................... 6

*R.W.B. of Riverview, Inc.* v. *Stemple*,
    111 F. Supp. 2d 748 (S.D.W.Va. 2000)................................. 11

*Respublica* v. *Oswald*,
    1 U.S. (1 Dall.) 319 (Pa. 1788) ....................................... 9

*Schneider* v. *New Jersey (Town of Irvington)*,
    308 U.S. 147 (1939)......................................................................... 11

*Staub* v. *City of Baxley*,
    355 U.S. 313 (1958) ......................................................................... 8

*Tom T., Inc.* v. *City of Eveleth*,
    2003 U.S. Dist. LEXIS 3718 (D. Minn. March 11, 2003). ............................... 11

*Toribio-Chavez* v. *Holder*,
    611 F.3d 57 (1st Cir. 2010)................................................................. 18

*United States* v. *Chester*,
    628 F.3d 673 (4th Cir. 2010). ....................................................... 7, 9, 15

*United States* v. *Engstrum*,
    609 F. Supp. 2d 1227 (D. Utah 2009)...................................................... 15

*United States* v. *Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ................................................................. 10

*United States* v. *Masciandaro*,
    2011 U.S. App. LEXIS 5964 (4th Cir. March 24, 2011) ............................. 9, 15

*United States* v. *Salerno*,
    481 U.S. 739 (1987)...................................................................... 5, 6

*United States* v. *Stevens*,
    130 S. Ct. 1577 (2010) .................................................................... 6

*Wash. State Grange* v. *Wash. State Repub. Party*,
    552 U.S. 442 (2008)....................................................................... 5

*Washington* v. *Glucksberg*,
    521 U.S. 702 (1997) ...................................................................... 5

Other Authorities

http://www.atf.gov/statistics/download/afmer/2009-firearms-
    manufacturers-export- report.pdf (last visited May 5, 2011)............................ 3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COMMONWEALTH OF MASSACHUSETTS' MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION

## PRELIMINARY STATEMENT

Intervenor-Defendant Commonwealth of Massachusetts raises many points overlapping with those made by the primary Defendants, the City and Boston and its Police Commissioner, Edward Davis. The primary Defendants are the ones who directly revoked Hightower's permit and who are responsible, under the Commonwealth's laws, for establishing their own practices and policies with respect to the issuance of handgun carry permits.

There being no need to burden the Court with duplicative pleading, Hightower incorporates by reference her opposition to the primary Defendants' motion for summary judgment as though fully set forth herein to respond to the overlapping arguments. This brief addresses only those matters uniquely or primarily argued by the Commonwealth.

## STATEMENT OF FACTS

The facts are more fully developed in response to the primary Defendants' brief, considering that brief makes more factual claims, and the fact that Hightower interacted at all relevant times with the primary Defendants, not with the Commonwealth.

But some of the Commonwealth's factual assertions demand response. First, as noted in the opposition to the primary Defendants' motion, Hightower's revolver "does not qualify as a large capacity firearm." City Defs. Br. at 22 n.17. Hightower does not seek to carry "a Glock 19 with a 33-round extended magazine" or "assault rifles like the M-16." Commonwealth Br. at 7. The issues of whether such firearms, or even regular "Class A" handguns, are constitutionally protected, are simply not before the Court. Hightower's permit happened to allow a "Class A" handgun, but she is not seeking the return of such a handgun, which she never privately owned.

Rather, the issue here is that Hightower wants a permit that would allow her to carry a handgun—the one she had seized from her—for self-defense. In other words, she wants a carry permit that is not so restricted as to ban the bearing of arms as described by the Second Amendment. But as the primary Defendants make clear, she will not obtain such a permit unless they deem it to be within their "interests."

Accordingly, it is misleading to state that 98% of all permit applications are granted, and only 2% are denied. The Commonwealth does not inform the Court how many permits within that 98% were restricted so as to ban the carrying of handguns in public for self-defense—a subject left to local licensing officials, such as the primary Defendants. And even if all the other jurisdictions in Massachusetts were to liberally grant unrestricted Class B and A licenses, the fact is that Hightower lives in Boston, where Defendants do *not* look favorably upon true carry permits. Very few apply, fewer still are issued true carry permits—and Hightower's permit was revoked. The Commonwealth is entitled to intervene in this case to defend the constitutionality of its laws, but it is unclear to what extent the Commonwealth has an interest in the particular policies of local licensing officials, which vary in their fidelity to constitutional standards.

Although not at issue in this case, Hightower is constrained to note that the Commonwealth fails to produce any *evidence* that would shed light on questions of whether a 33-round Glock 19, an M-16, a regular "Class A" handgun, or anything else, would or would not be a protected Second Amendment arm under the test set forth by *District of Columbia* v. *Heller*, 554 U.S. 570 (2008). But suffice it to say that ordinary semi-automatic handguns, virtually all of which can accept a detachable magazine that might have over ten rounds and thus fit the Commonwealth's definition of "Class A" handguns, comprise the overwhelming majority of

handguns manufactured in the United States today.[1] It is impossible to claim that handguns termed "Class A firearms" by the Commonwealth are "typically not needed for lawful purposes" or are "unusually dangerous." Commonwealth Br. at 7. And whether these were in use in the 18th century is irrelevant:

> Some have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment. We do not interpret constitutional rights that way . . . the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.

*Heller*, 554 U.S. at 582 (citations omitted).

Thus, even were Hightower seeking the return of a "Class A" handgun, the Commonwealth has failed to aver any evidence (as opposed to conclusory assertions, unwarranted comparisons with *other*, very different arms, and inapposite historical analogies) that would enable the Court to adjudicate whether "Class A" handguns are protected arms. In any event, again, that issue is simply not before the Court.

As for the other unique feature of a Class A permit—that it enables concealment—Hightower has repeatedly made clear that just because the permit she had allowed for this activity does not make it the gravamen of her case. Nonetheless, the Commonwealth selectively cites to Hightower's deposition testimony for the proposition that she seeks, specifically, to carry concealed. Hightower's *complete*, *specific* testimony is otherwise:

Q:     You don't want your gun license if you can't carry it concealed?

A:     That's not necessarily true.

Commonwealth Exh. 1, p. 90, l. 24 - p. 91, l.1.

---

[1]*See* http://www.atf.gov/statistics/download/afmer/2009-firearms-manufacturers-export-report.pdf (last visited May 5, 2011) (1,868,258 pistols v. 547,195 revolvers).

Hightower might *prefer* carrying concealed, but her testimony flatly rejects the Commonwealth's attempt to convert this case into one that turns on concealment. It does not. And nowhere do the primary Defendants claim that they will allow Hightower to openly carry a handgun. They make quite clear that Hightower can only take her guns outside the home locked in a case, unloaded, and perhaps in the trunk of a car. Def. Exh. C, ¶¶ 8, 19. These restrictions would only be lifted if the primary Defendants determined that doing so would be within their "interests." *Id.*

## SUMMARY OF ARGUMENT

The Commonwealth's standing and ripeness claims are addressed more fully in the response to the primary Defendants' motion. Suffice it to say here that there is no need to engage in futile, ritualistic acts to ripen a claim—and the idea that a license revocation does not present a live, justiciable controversy is untenable. Plaintiff's other opposition brief also addresses in greater detail the erroneous claim that somehow Second Amendment rights must be cabined to the home.

The Commonwealth takes the lead in asserting some arguments, and these are addressed in turn. Overbreadth is not only a valid, but absolutely essential Second Amendment doctrine, because at least some dangerous, irresponsible people will never be deserving or capable of enjoying the right to keep and bear arms. Any disarmament law might be a good idea applied to *someone*, but that does not mean that all gun laws are always constitutional. The "suitable person" standard is a classic prior restraint. Courts utilize First Amendment frameworks for testing the Second Amendment, and this particular tool best fits the Defendants' laws and practices. That the federal court's enterprise of enforcing Second Amendment rights against the states is relatively young is no reason to avoid doing so in the most correct and practical manner.

4

Even if the "suitable person" standard were tested under a means-ends level of scrutiny—any level of scrutiny—it would fail, simply because whatever its interests may be in regulating firearms, the Commonwealth has no interest, let alone an important or compelling interest, in depriving people of a fundamental constitutional right.

The Commonwealth claims that the "suitable person" classification is not arbitrary, but fails to define it or explain how it should work. For the same reason, this method of delineating those who may exercise a fundamental right, from those who do not, fails equal protection standards, nor does it comport with appropriate due process considerations. And the procedures afforded people disarmed by these laws hardly comport with constitutional requirements.

ARGUMENT

I.     OVERBREADTH IS A SECOND AMENDMENT DOCTRINE.

The Commonwealth suggests, almost in passing, that a facial challenge cannot be leveled at its arbitrary licensing standards because the law both has "a plainly legitimate sweep," Commonwealth Br. at 9 (quoting *Wash. State Grange* v. *Wash. State Repub. Party*, 552 U.S. 442, 450 (2008)), and because Hightower cannot "establish that no set of circumstances exists under which the Act would be valid." *Id.*, at 9-10 (quoting *United States* v. *Salerno*, 481 U.S. 739, 745 (1987)).

The two standards were, until very recently, in competition for five Supreme Court votes. The "plainly legitimate sweep" standard is more permissive than the "no set of circumstances" standard. *See, e.g. Wash. State Grange*, 552 U.S. at 449; *Washington* v. *Glucksberg*, 521 U.S. 702, 739-40 & n.7 (1997) (Stevens, J., concurring in judgments) ("I do not believe the Court has ever actually applied such a strict standard, even in *Salerno* itself"). This past term, the Supreme Court finally confirmed the "plainly legitimate sweep" standard as a valid alternative to the "no

set of circumstances" standard for facial challenges. *United States* v. *Stevens*, 130 S. Ct. 1577, 1587 (2010) (noting that neither standard is rooted in the First Amendment) (citations omitted).

But even before *Stevens*, (the unrelated) Justice Stevens had a point in criticizing *Salerno*'s application. By its terms, *Salerno* never applied to First Amendment cases. *Salerno*, 481 U.S. at 745. Nor did it apply in abortion cases, where laws were deemed facially invalid where they imposed undue burdens on abortion access, not in *all* cases, but "in a large fraction of the cases." *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 895 (1992). And of course, the *Salerno* "no set of circumstances" standard did not apply in *Heller* or *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010).

*Heller* sustained a facial challenge to three generally-applicable gun laws. The Supreme Court acknowledged that some individuals could be denied firearms, *Heller*, 554 U.S. at 626, and even cautioned that Mr. Heller, specifically, might not be entitled to relief: "*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Heller*, 554 U.S. at 635 (emphasis added). *McDonald* rejected arguments for why a handgun ban might be available to state actors, even were it unavailable to federal actors, but reiterated the notion that at least some individuals could be denied access to handguns.

But under Defendants' formulation, the results in *Heller* and *McDonald* would have been impossible, as there remain individuals in Washington, D.C. and Chicago who may be barred from accessing functional handguns. That is clearly not the law. As there will always be individuals who can, for some specific and obviously compelling reason (violent criminal history, mental illness, etc.), be totally disarmed, a "no set of circumstances" test is simply incompatible with the idea that some gun laws run afoul of the Second Amendment.

The Fourth Circuit recently confronted the issue. When a panel majority, following the lead of other circuits, expressly adopted the First Amendment as a framework for examining Second Amendment rights, *United States* v. *Chester*, 628 F.3d 673, 682 (4th Cir. 2010), one judge dissented specifically out of a desire to impose *Salerno* in Second Amendment cases. *Id.*, at 687-88 (Davis, J., concurring in judgment). Clearly the argument did not carry the majority.

It is easy to see how a felon dispossession law might have a "plainly legitimate sweep," even if a few felons might be able to claim that under their particular circumstances, they should be able to restore their firearms rights. But the idea that a "suitable person" licensing standard applied to *all law-abiding individuals* has a "plainly legitimate sweep" is difficult to accept. The "standard" is inherently arbitrary: all individuals are subjected to the whim of a licensing official, who determines whether it is in the government's "interests," Def. Exh. C, ¶ 19, that they be allowed to exercise a fundamental constitutional right. Without some more limiting objective standards, the standard imposes a burden on all individuals to prove, in the first instance, that they are entitled to exercise what is their fundamental constitutional right.

But even were Plaintiff's facial claims subject to a "no set of circumstances" test, the fact remains the complaint also asserts an "as applied" challenge—since Hightower has had her license revoked under the plenary, standardless authority she challenges, and without the due process she seeks. *See, e.g.* First Am. Complaint, ¶¶ 65, 70 ("as applied").

II.   THE SUITABILITY STANDARD IS MOST PRACTICALLY ANALYZED AS A PRIOR RESTRAINT UNDER EXISTING FRAMEWORKS.

The Commonwealth labors mightily to avoid application of prior restraint standards, because there is simply no defending the completely arbitrary non-standards utilized in issuing, or not issuing, handgun carry permits.

Applying a means-ends level of scrutiny to test Defendants' practices is not the most logical course of action. Such levels of scrutiny, whatever they may be in a particular case, are only useful in evaluating laws that restrict a constitutional right upon the existence of some specific condition. In such cases, a court may examine the condition and weigh it against the right at issue through whichever scrutiny-lens is most apt. In the Second Amendment context, a felon disarmament law, or some condition upon the purchase or sale of firearms, would fit comfortably into this sort of analysis.

But here, the issue is whether Defendants may bar individuals from exercising the right at all by use of a permitting scheme. This comes literally within the definition of a prior restraint—there is no better, indeed, there may be no other, logical interpretive tool. After all, the right to carry firearms is a "freedom which the Constitution guarantees," and "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official" is "an unconstitutional censorship *or* prior restraint upon the enjoyment of those freedoms." *Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted) (emphasis added).

Of course it is true that prior restraints have, until now, mostly been adjudicated in the context of the First Amendment. But that is only because Second Amendment law is in its infancy. The Commonwealth's protest that prior restraint doctrine has not yet been applied to the Second Amendment does not prove much, considering that *McDonald*—and with it, Supreme Court recognition that state and local laws are even subject to the Second Amendment—is not even a year old.

The Second Amendment's parallels to the First have been observed by courts dating to the earliest days of our nation. *See Commonwealth* v. *Blanding*, 20 Mass. 304, 314 (1825) ("The

8

liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its abuse; like the right to keep fire arms, which does not protect him who uses them for annoyance or destruction."); *Republica* v. *Oswald*, 1 U.S. (1 Dall.) 319, 330 n.* (Pa. 1788) ("The right of publication, like every other right, has its natural and necessary boundary; for, though the law allows a man the free use of his arm, or the possession of a weapon, yet it does not authorize him to plunge a dagger in the breast of an inoffensive neighbour."). The analogy is unsurprising: the First and Second Amendments are the only provisions of the Bill of Rights that secure some substantive individual conduct—speech, worship, the keeping and bearing of arms—against government infringement.

Not surprisingly, the trend among federal courts is to look to the First Amendment in seeking interpretive guidelines for the Second.[2] "[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment." *Chester*, 628 F.3d at 682 (citations omitted); *cf. United States* v. *Masciandaro*, 2011 U.S. App. LEXIS 5964 at *32 (4th Cir. March 24, 2011) ("[A]s has been the experience under the First Amendment, we might expect that courts will employ different types of scrutiny in assessing burdens on Second Amendment rights, depending on the character of the Second Amendment question presented."). "The protections of the Second Amendment are subject to the same sort of reasonable restrictions that have been recognized as limiting, for instance, the First Amendment." *Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007) (citation omitted), *aff'd sub nom. Heller*.

---

[2]Defendants likewise draw upon the First Amendment by claiming an intermediate time, place and manner standard for certain forms of gun carrying restrictions.

Because *Heller* is the first Supreme Court case addressing the scope of the individual right to bear arms, we look to other constitutional areas for guidance in evaluating Second Amendment challenges. We think the First Amendment is the natural choice. *Heller* itself repeatedly invokes the First Amendment in establishing principles governing the Second Amendment. We think this implies the structure of First Amendment doctrine should inform our analysis of the Second Amendment.

*United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010).

It is no answer for Defendants to claim that First Amendment frameworks cannot be used in Second Amendment cases because the First Amendment secures speech, and guns are not speech. Of course the two amendments relate to different subjects. But the issue is whether the First Amendment frameworks are practical in a Second Amendment context. Courts conclude that they are, recognizing that First Amendment frameworks are designed to ferret out unconstitutional interference with a sphere of specifically enumerated individual autonomy—the same basic design of the Second Amendment.

The fact that states are allowed to ban certain forms of gun carrying, e.g., concealed carrying, hardly indicates that prior restraint doctrine is inapplicable. States are also allowed to ban certain manners of speech, e.g., noise or sign placement restrictions. In the First Amendment context, the failure to permit *all* forms of speech at all times does not make the prior restraint doctrine unworkable. It indicates that the doctrine is practical.

Defendants' "suitable person" law is a prior restraint, and it should be analyzed as such. As Defendants apparently recognize, doing so makes short work of their requirement that individuals prove they are "suitable" to exercise a constitutional right. That standard is plainly among the impermissible "illusory 'constraints'" on licensing discretion amounting to "little more than a high-sounding ideal." *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 769-70 (1988).

Indeed, the Supreme Court long ago rejected the constitutionality of an ordinance demanding "good character" as a prerequisite for a canvassing license. *Schneider* v. *New Jersey (Town of Irvington)*, 308 U.S. 147, 158 (1939). Absent further definition, courts typically reject all forms of "moral character" standards for the licensing of fundamental rights. *MD II Entertainment* v. *City of Dallas*, 28 F.3d 492, 494 (5th Cir. 1994); *Genusa* v. *Peoria*, 619 F.2d 1203, 1217 (7th Cir. 1980); *N.J. Envtl. Fed'n* v. *Wayne Twp.*, 310 F. Supp. 2d 681, 699 (D.N.J. 2004); *Ohio Citizen Action* v. *City of Mentor-On-The-Lake*, 272 F. Supp. 2d 671, 682 (N.D. Ohio 2003); *Tom T., Inc.* v. *City of Eveleth*, 2003 U.S. Dist. LEXIS 3718 at *14-15 (D. Minn. March 11, 2003); *R.W.B. of Riverview, Inc.* v. *Stemple*, 111 F. Supp. 2d 748, 757 (S.D.W.Va. 2000); *Elam* v. *Bolling*, 53 F. Supp. 2d 854, 862 (W.D.Va. 1999); *Ohio Citizen Action* v. *City of Seven Hills*, 35 F. Supp. 2d 575, 579 (N.D. Ohio 1999); *Broadway Books, Inc.* v. *Roberts*, 642 F. Supp. 486, 494-95 (E.D.Tenn. 1986); *Bayside Enterprises, Inc.* v. *Carson*, 450 F. Supp. 696, 707 (M.D. Fla. 1978).

All but proving Hightower's point, the Commonwealth provides as its examples of individuals who would be declared unsuitable, "people who commit violent acts." Commonwealth Br. at 15. Leaving aside the issue of burden of proof, it should not be difficult to establish "demonstrated history of violent acts" as an *objective* licensing disqualification. But Plaintiff respectfully disagrees with the claim that "[s]tatutory categories are not always better than individualized decisions." Commonwealth Br. at 14. Objective standards eliminate the prospects that impermissible or otherwise unfair and arbitrary "standards" would be applied. Yet beyond pointing to examples that could be reduced to an objective qualification standard, the Commonwealth leaves it a complete mystery as to what standards might guide a licensing official's "suitability" determination. And in attacking Hightower's procedural due process

argument, the primary Defendants extol their "broad discretion" to grant or revoke a license, and declare unequivocally that "[t]he general populace of the City of Boston is not entitled to an unrestricted Class A firearm license." Def. Br. at 30.

The Commonwealth disagrees that the licensing official's determination of its interests are arbitrary. But apart from stating this conclusion, it does absolutely nothing to show what the standards actually are. The Commonwealth cites to *Lizotte* v. *Chief of Police*, 2006 Mass. Super. LEXIS 171 (2006), but that opinion contains no licensing standards. It recites that the applicant has the burden of showing the denial was "arbitrary, capricious, or an abuse of discretion," and that the police chief has "considerable latitude." *Id.* at *3-*4. Lizotte succeeded only because the police chief's designee had no personal knowledge of the threats asserted as a basis for denial. The closest the Commonwealth's brief comes to attempting enunciation of some standard is a citation to *Howard* v. *Chief of Police*, 59 Mass. App. Ct. 901, 902, 794 N.E.2d 604 (2003) as describing "legal standard for judicial review of firearm licensing decision." Commonwealth Br. at 15. But that case holds only that in contesting a licensing action, the individual bears the burden of proving, under an "arbitrary, capricious, or an abuse of discretion" standard, that there was "no reasonable ground" for the denial, suspension, or revocation. *Howard*, 59 Mass. App. Ct. at 902 (citations omitted). This is hardly an objective standard, or even any standard at all, considering the government's default position is that people are *not* entitled to carry handguns for self-defense. An individual has the impossible task of proving that a police chief, of all people, had no valid reason to deny granting the individual a special dispensation to which individuals are normally not entitled. But no actual standards guiding the decision are mentioned.

Indeed, virtually any reason offered by the police will be accepted, even if the police act in a punitive and unconstitutional manner. For example, the police may unilaterally declare that the applicant "refused to cooperate with the police investigation and respond to questions," and even where this alleged refusal to cooperate is itself constitutionally-protected, a remedy does not include reinstatement of a firearms license. *Godfrey* v. *Chief of Police*, 35 Mass. App. Ct. 42, 48, 616 N.E.2d 485, 488 (1993).

III.  RESTRICTING FUNDAMENTAL RIGHTS TO "SUITABLE PEOPLE" VIOLATES THE EQUAL PROTECTION CLAUSE.

"As we explained long ago, the Fourteenth Amendment 'requires that all persons subjected to . . . legislation shall be treated alike, *under like circumstances and conditions*.'" *Engquist* v. *Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008) (citation omitted). The primary Defendants seek to avoid the Equal Protection Clause's reach by placing Hightower in a category of "applicants who provided, either intentionally or unintentionally, false information on their firearms applications." Def. Br. at 34. These are hardly people who can be lumped together as presenting like circumstances and conditions. An individual who lies about a record of violent crime is simply not in the same category as one who has ample reason to believe in good faith that she has no "charges pending" against her, especially where the alleged pendency of charges is not claimed to be itself a disqualifying factor.

The correct category for Hightower is simply, "law-abiding Bostonian fully qualified to possess firearms." All people in this category should expect to have their applications treated equally. Yet instead, all are subjected to a classification that is inherently arbitrary, depending upon the unbridled discretion of the licensing official. This does not even satisfy rational basis review, but the standard here is, of course, much higher, as a fundamental right is at stake—not

the mere rationality employed by the primary Defendants.

The Commonwealth's resistance to the Equal Protection claim rests largely upon its unwillingness to accept that the fundamental Second Amendment right to bear arms includes the right to carry handguns for self-defense outside the home. If one fails to acknowledge the existence of a fundamental right, then rational basis may be permissible. But the Commonwealth asserts the erroneous proposition

> [t]hat a constitutional right is deemed sufficiently important to be incorporated into the Fourteenth Amendment's Due Process Clause does not mean that a classification alleged to infringe that right is subject to "a standard of scrutiny stricter than the traditional rational-basis test" under the Equal Protection Clause.

Commonwealth Br. at 19 (quoting *Johnson* v. *Robison*, 415 U.S. 361, 375 n.14 (1974)). This is quite simply error, and incompletely quotes *Johnson*. The quoted clause fully reads: "*since we hold in Part III, infra, that the Act does not violate appellee's right of free exercise of religion*, we have no occasion to apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test." *Johnson*, 415 U.S. at 375 n.14 (emphasis added). Obviously, if the Second Amendment applies—and it does—mere rational basis scrutiny cannot be applied to classifying Hightower according to Defendants' unbridled discretion.

Moreover, the Commonwealth fundamentally misconstrues Hightower's claim. She indeed asserts that the "suitable person" classification standard constitutes "a gross abuse of power," utilizes "fundamentally unfair procedures" and imposes "unjustified disparate treatment with respect to similarly situated applicants." Commonwealth Br. at 19 (quoting *Collins* v. *Nuzzo*, 244 F.3d 246, 251 (1st Cir. 2001). The constant theme of Hightower's claim is that the process is entirely arbitrary. She does not claim that the Defendants erred in applying a standard, but that the "standard" itself, such that it might be, is constitutionally deficient.

IV.    THE SUITABLE PERSON STANDARD FAILS MEANS-ENDS SCRUTINY.

The Commonwealth over-simplifies in declaring that "[t]he clear consensus is that intermediate scrutiny—but not strict scrutiny—is appropriate where the Second Amendment is implicated." Commonwealth Br. at 12. As noted *supra*, courts are looking to the First Amendment as a guide in Second Amendment cases. And as noted in Hightower's summary judgment brief, courts that apply intermediate scrutiny in a Second Amendment context usually point to some reason for doing so: typically, because the activity or individual at issue stands, at best, on the periphery of the Second Amendment,[3] or because the restriction is in the nature of time, place, or manner, which is itself an intermediate scrutiny standard.

Some courts have held that strict scrutiny will apply in the Second Amendment context, either categorically, *United States* v. *Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009), or under some circumstances, *e.g. Masciandaro*, 2011 U.S. App. LEXIS 5964 at *34-*35. At least one intermediate scrutiny precedent invoked by Defendants rests on an invalid premise. In *Heller* v. *District of Columbia*, 698 F. Supp. 2d 179 (D.D.C. 2010) ("Heller II"), appeal pending, No. 10-7036 (D.C. Cir.), the court reasoned that strict scrutiny could not apply because in *Heller*, "the Supreme Court did not explicitly hold that the Second Amendment right is a fundamental right . . . If the Supreme Court had wanted to declare the Second Amendment right a fundamental right, it would have done so explicitly." *Id.*, at 187. Three months after these words were written, the Supreme Court declared the Second Amendment right "fundamental." *McDonald*, 130 S. Ct. at 3042 (plurality opinion) & 3059 (Thomas, J., concurring).

_____

[3]Contrary to the Commonwealth's assertion that strict scrutiny is incompatible with *Heller*'s presumptively lawful restrictions, those exceptions make sense only when recalling that they describe circumstances outside "the full scope of the Second Amendment." *Heller*, 554 U.S. at 626; *see Chester*, 628 F.3d at 682-83.

However, even if intermediate scrutiny were the correct standard, the "suitable person" pre-requisite to the exercise of a fundamental right would fail for the simple reason that there is no legitimate governmental interest at stake. The dispute as to strict versus intermediate scrutiny is, in the end, irrelevant. To be sure, Massachusetts has a compelling governmental interest in regulating firearms in the interest of public safety. But pounding the table on this obvious proposition is beside the point, because Massachusetts lacks any governmental interest, much less a compelling or important one, in preventing people from exercising constitutional rights. If there is a right to carry a handgun for self-defense, Defendants cannot deny that right to anyone on grounds that the right is too dangerous to permit. The very idea that individuals enjoy a right means that the state lacks an interest in preventing people from enjoying it.

Had this case concerned some actual regulation of the right to bear arms, Defendants would be in a different posture. But here, Defendants do nothing more than offer reasons why the right to bear arms is a bad idea, and having asserted that this right is too dangerous to tolerate, Defendants conclude that their arbitrary denial of the right to anyone who cannot prove "suitability" for wanting to exercise their right provides a good fit with their alleged interest. Using this reasoning, Defendants can restrict the exercise of any constitutional right.

V. HIGHTOWER WAS DEPRIVED OF DUE PROCESS.

As a preliminary matter, Hightower notes that the primary Defendants' claim that she had no protected liberty interest in carrying a handgun for self-defense is answered by the Second Amendment discussion. Their claim that Hightower had no property interest in her permit, because the state has virtually complete discretion in whether to revoke or issue the permit such the Hightower has no right to expect possession of a permit, is well-taken if somewhat surprising; if accepted, this argument establishes both Hightower's unbridled

discretion claim, as well as her procedural due process claim relative to the liberty interest in bearing arms.

A.    Hightower Was Denied Procedural Due Process.

Hightower never claims that pre-deprivation hearings must be offered for *all* handgun license revocations. Her brief specifically provides that there may be exigent circumstances under which the revocation might precede a hearing. But as the Commonwealth offers,"due process is flexible and calls for such procedural protections as the particular situation demands." Commonwealth Br. at 18 (quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972)). In this case, Defendants never claimed, and do not now claim, that Hightower poses any sort of threat to public safety. They were plainly aware of any "charges" that might have been "pending" against Hightower, and took no action to disarm her for three years. Considering the substantial individual interest in self-defense, at least some pre-deprivation hearing should be afforded individuals where the only potential dispute relates to paperwork.

Otherwise, the process afforded handgun carry licensees borders on the farcical. As noted above, since Defendants presume that individuals are not entitled to a permit, and the individual carries the burden of proof in any administrative appeal, the individual effectively has the burden of disproving the negative proposition that they are not entitled to a permit. There is no "de novo" review of the licensor's decision, which is reviewed, if at all, with extreme deference. *Godfrey*, 35 Mass. App. Ct. at 44-45. Hearsay is admissible. *Chief of Police* v. *Moyer*, 16 Mass. App. Ct. 543, 547, 453 N.E.2d 461, 464 (1981). There is no requirement for the police chief to file an answer to a petition for review, and neither the rules not timetable for a hearing typically allow for discovery.

This is no way to secure a fundamental constitutional right. Because a *right* is at issue, the burden should rest on the police to prove that there is some reason for denying it. *Cf. Freedman* v. *Maryland*, 380 U.S. 51, 58 (1965). The police chief should be required to at least announce his reasoning prior to the hearing, and the individual should be afforded both an opportunity to discover evidence, as well as the right to face her accusers and otherwise demand the protection of evidentiary rules. Due process, in the American tradition, typically involves notice and an meaningful opportunity to be heard, neither of which is present in the Commonwealth's current system for "reviewing" a police chief's decision to foreclose the exercise of a fundamental constitutional right.[4]

B.      Hightower Was Denied Substantive Due Process.

Defendants argue that even if the due process clause substantively protects the right to bear arms, the revocation does not violate substantive due process because it does not rise to the level of "conscience-shocking." *See, e.g.* Commonwealth Br. at 33 (quoting *DePoutot* v. *Raffaelly*, 424 F.3d 112, 119 (1st Cir.2005)). Of all of Defendants' arguments, this one is best-supported. The term "conscious shocking" indeed suggests, on its face, extreme behavior. Considering that substantive due process claims frequently arise from police encounters far removed from any administrative setting, it is unsurprising that extreme behavior would become

_____

[4]The Commonwealth's citation to *Toribio-Chavez* v. *Holder*, 611 F.3d 57 (1st Cir. 2010), is inapposite. No fundamental right was being adjudicated in that immigration hearing, and the court found that the use of hearsay evidence was "not fundamentally unfair, nor did it cause prejudice," because it was afforded limited weight and played no decisive role in the decision. *Id.* at 66. *Beauchamp* v. *De Abadia*, 779 F.2d 773 (1st Cir. 1985) is likewise inapposite, as the plaintiff there "conceded that most of the documentary evidence relied on by the hearing examiner would have been admissible even under the Federal Rules." *Id.* at 775. There is otherwise no basis to compare the quality of those proceedings with that afforded Hightower.

a touchstone for determining what "shocks the conscience."  But upon closer examination, the argument is unpersuasive.

The First Circuit cautions that "the standard is imprecise," *id.*, at 118, and that substantive due process violations "are difficult to summarize because, by their nature, such decisions are almost always highly dependent on context and detail." *Id.* Ultimately, the standard appears to have the following definition: whether, under "the totality of circumstances, [the conduct] was reasonable under the circumstances and proportionate to the governmental interest at stake." *Id.* The standard is employed because "executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law." *County of Sacramento* v. *Lewis*, 523 U.S. 833, 847 (1998).

No such risk exists here. Hightower does not seek money damages, and there is nothing asserted along the lines of a negligence claim. On the other hand, the essential individual interest is one of self-defense, and it does thus bear directly upon Hightower's bodily integrity. Moreover,  Hightower submits that under "the totality of circumstances," revoking her handgun carry permit was not "reasonable under the circumstances and proportionate to the governmental interest at stake." *DePoutot*, 424 F.3d at 119. The Defendants claimed that she filled out a form incorrectly, and whether she actually erred is plainly at worst a matter of legitimate dispute. The information allegedly concealed had long been known to Defendants, who still do not claim that it is substantively disqualifying Hightower from carrying a handgun for self-defense. Yet the revocation occurred anyway.  The transaction does not involve any physical interaction between the parties, but it does satisfy *DePoutet*'s most precise definition of the conscience-shocking standard, as well as the Supreme Court's concerns enunciated in *Lewis*.

CONCLUSION

The Commonwealth's motion for summary judgment must be denied, and Plaintiff's

motion for summary judgment should be granted.

Dated: May 6, 2011                          Respectfully submitted,

Chester Darling (BBO # 114320)              Alan Gura
9 Mayflower Drive                           Gura & Possessky, PLLC
Andover, MA 01810                           101 N. Columbus Street, Suite 405
978.475.2520                                Alexandria, VA 22314
Fax 978.475.1741                            703.835.9085/Fax 703.997.7665

By:    /s/ Chester Darling                  By:   /s/ Alan Gura
       Chester Darling                            Alan Gura
                                                  Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I, Alan Gura, hereby certify that this document filed through the ECF system was served

on all counsel of record.

Date: May 6, 2011                   /s/ Alan Gura
                                    Alan Gura

20