UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STACEY HIGHTOWER
Plaintiff,

v.

CITY OF BOSTON, BOSTON POLICE
COMMISSIONER EDWARD DAVIS, and the
COMMONWEALTH OF MASSACHUSETTS,
Defendants.

No. 08-CV-11955-DJC

Leave to File Granted February 14, 2011

**REPLY MEMORANDUM BY THE COMMONWEALTH OF MASSACHUSETTS
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**Reply Argument.**

**I.    HIGHTOWER'S SUBMISSIONS CONFIRM THAT HER CLAIMS ARE NOT RIPE.**

By stating that she has no interested in carrying a large-capacity weapon or in carrying a

concealed weapon,[1] and conceding "that the concealed carrying of handguns may be banned"

without violating the Second Amendment to the United States Constitution,[2] Hightower has

confirmed that her Second Amendment and Substantive Due Process claims are not ripe.  As the

Commonwealth has demonstrated, (1) the Second Amendment does not give Hightower any

right to possess a large-capacity firearm or to carry a concealed gun in public, (2) the relief

sought by Hightower, i.e. reinstatement of her unrestricted Class A license to carry, would allow

her to carry concealed, large-capacity firearms in public; (3) Hightower's has never sought nor

been denied a more restricted license that would not cover large-capacity or concealed weapons,

and (4) thus, Hightower's claim that she has been deprived of a purported Second Amendment

right to carry a regular-capacity handgun openly in public is not yet ripe.[3]  Hightower confirms

that she does not even want an unrestricted Class A license.[4]  The City noted that Hightower

---

[1]    *See* Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 1-4; *see also* Hightower's Opp. to
City's S.J. Motion (doc. no. 43) at 2 ("Hightower is *not* claiming a right to carry a concealed handgun per se).
[2]    *See* Hightower's Opp. to City's S.J. Motion (doc. no. 48) at 2; *see also* Hightower's Opp. to
Commonwealth's S.J. Motion (doc. no. 45) at 10 (conceding that under the Second Amendment "states are allowed
to ban certain forms of gun carrying, e.g., concealed carrying").
[3]    *See* Commonwealth's S.J. Memorandum (doc. no. 36) at 6-9.
[4]    *See* Hightower's Opp. to City's S.J. Motion (doc. no. 48) at 3 n.2 (stating that whether "Class A handguns
are somehow not constitutionally-protected . . . is simply not an issue in this case, because Hightower's complaint
seeks only the return of and right to carry her Class B revolver.  This litigation is unrelated to any Class A
handguns."); *accord* Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 1-2.

"could have applied for a Class B license in order to possess her personal five-round revolver because it does not qualify as a large capacity firearm under the Massachusetts firearm statute."[5] Hightower agrees, and asserts that all she wants to be able to do is carry that gun in an unconcealed manner.[6]  But the mere fact that the City revoked Hightower's unrestricted Class A license due to her lack of candor as a police officer when applying for renewal of that license does not establish that as a civilian she could not get a restricted Class A license or a Class B license limited to the carrying of her five-round revolver.[7]  Thus, her claims are not ripe.

With respect to large-capacity weapons, there is no merit to Hightower's suggestion that they may be covered by the Second Amendment.  The Supreme Court has emphasized that one "important limitation on the right to keep and carry arms" is that "the sorts of weapons protected [by the Second Amendment] were those 'in common use at the time'" the amendment was enacted.  *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) (quoting *United States v. Miller*, 307 U.S. 174 (1939)).  As a result, high-capacity weapons like an M-16 rifle "may be banned" without violating or even implicating the Second Amendment.  *Id*.  Thus, *Heller* establishes that the carrying of modern firearms with "large capacity ammunition feeding devices" is not protected by the Second Amendment.  *Heller v. District of Columbia*, 698 F.Supp.2d 179, 193-95 (D.D.C. 2010) ("*Heller II*") (upholding new District of Columbia firearm licensing ordinance passed after Supreme Court decision), appeal pending, No. 10-7036 (D.C. Cir.).  Rather than confront this aspect of *Heller*, Hightower instead tries to rebut an argument that she merely imagines:  the Commonwealth did not and does not argue that "only those arms in existence in the 18th century are protected by the Second Amendment."[8]

The Second Amendment does not protect "a right to keep and carry any weapon whatsoever."  *United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009), *cert. denied*, 130 S.Ct. 1109 (2010) (quoting *Heller*, 554 U.S. at 626).  To the contrary, "laws prohibiting the carrying of 'dangerous and unusual weapons'" are "'presumptively lawful' under the Second Amendment."

---

[5]   City's S.J. Memorandum (doc. no. 41) at 22 n.17.
[6]   Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 1-4.
[7]   *Cf.* Commonwealth's S.J. Memorandum (doc. no. 36) at 8-9.
[8]   *See* Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 3 (quoting *Heller*, 554 U.S. at 582).

*Id.* (quoting *Heller* at 627 & n.26). The Court "must give this language great weight," even though these statements in *Heller* were dicta. *See United States v. Southern Union Co.*, 630 F.3d 17, 34 (1st Cir. 2010). The Court is "bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement." *Id.* (quoting *McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir.1991)) (internal quotation mark omitted).

Hightower's suggestion that if she has standing then her claims must be ripe is also incorrect.[9] "'Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention,' requiring an inquiry into both mootness and ripeness." *Overseas Military Sales Corp. Ltd. v. Giralt-Armada*, 503 F.3d 12, 17 n.5 (1st Cir. 2007) (quoting *Renne v. Geary*, 501 U.S. 312, 320-21 (1991)). "Although related to standing, the question of ripeness for review requires a discrete inquiry." *Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 940-41 (D.C. Cir. 1986). "Standing doctrine is designed to determine who may institute the asserted claim for relief. Ripeness doctrine addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." *Id.* at 941. As the First Circuit has emphasized, the requirement of "'ripeness' . . . governs when a proper party may bring a justiciable action consistent with Article III" of the United States Constitution. *Gilday v. Dubois*, 124 F.3d 277, 295 (1st Cir. 1997). Ripeness doctrine protects against "premature adjudication," keeps courts "from entangling themselves in abstract disagreements," "avoid[s] unnecessary constitutional decisions," and reflects "the recognition that, by waiting until a case is fully developed before deciding it, courts benefit from a focus sharpened by particular facts." *Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003) (internal citations omitted). Hightower's claims are not yet fully developed, and thus are not ripe, because she has never sought a license to carry that would not allow her to carry a large-capacity weapon in a concealed manner in public.

---

[9]   *See* Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 4 (asserting that the Commonwealth's demonstration that this case is not ripe is addressed in Hightower's response to the City's arguments regarding standing).

Finally, the two points that Hightower makes regarding ripeness in her opposition to the

City's cross-motion for summary judgment are both wrong.  First, Hightower asserts that,

because she seeks to challenge "the licensing standard" established by statute, "neither standing

nor ripeness can be issues at this point."[10]  But that's not correct.  The Court may not consider an

unripe constitutional challenge to a statute any more than it can consider any other unripe claim.

*See, e.g., Anderson v. Green*, 513 U.S. 557 (1995) (ordering dismissal of constitutional challenge

to State law on ground "that no justiciable controversy is before us, because the case in its

current posture is not ripe").  To the contrary, the constitutional and prudential concerns that

underlie the ripeness doctrine are particularly strong with respect to claims that a statute is

unconstitutional.  *See Doe v. Bush*, 323 F.3d at 138-41 (affirming dismissal of constitutional

challenge to the Authorization for Use of Military Force Against Iraq Resolution of 2002, on

ground that claims were not ripe).

Second, Hightower also asserts that the undisputed fact that she may be able to obtain a

"*restricted* license to possess a handgun" somehow "unravels" the Commonwealth's

demonstration that "the case is not ripe."[11]  But Hightower has it exactly backward.  The fact that

Hightower may be able to obtain the kind of restricted license she now says she wants, and that

the City has never had occasion to determine whether to issue such a license because Hightower

never sought one,[12] is precisely why her constitutional claims are premature and not ripe.

## II.    THE "SUITABLE PERSON" STANDARD SATISFIES THE EQUAL PROTECTION CLAUSE.

Shortly after the Commonwealth filed its initial memorandum (on April 21, 2011), the

United States Court of Appeals for the Ninth Circuit held that where an individual challenges a

statute that restricts the carrying of firearms, in part on the ground that the statute violates the

Second Amendment, a claim made under the Equal Protection Clause does not subject the statute

to anything more stringent than rational basis review.  *See Nordyke v. King*, 2011 WL 1632063,

*14 (9th Cir. May 2, 2011).  This holding confirms what the Commonwealth demonstrated on

---

[10] Hightower's Opp. to City's S.J. Motion (doc. no. 48) at 10.
[11] Hightower's Opp. to City's S.J. Motion (doc. no. 48) at 9 (emphasis in original).
[12] *See* Harrington Aff. (doc. no. 40-3) ¶¶ 18-19.

the basis of First Circuit precedent regarding the interplay of the First Amendment and the Equal Protection Clause.[13]  *See, e.g., Eulitt ex rel. Eulitt v. Maine, Dept. of Educ.*, 386 F.3d 344, 354 (1st Cir. 2004) (the Equal Protection Clause does not "erect a separate and distinct framework for analyzing claims" that the right protected by the Bill of Rights has been violated; instead, "rational basis scrutiny applies to any further equal protection inquiry").

Hightower is wrong when she asserts that "[t]he Commonwealth's resistance to the Equal Protection claim rests largely upon its unwillingness to accept that the fundamental Second Amendment right to bear arms includes the right to carry handguns for self-defense outside the home."[14]  It is true that the Second Amendment does not apply outside the home.[15]  But, as the Commonwealth explained, the Court "need not decide this issue" to resolve this case.[16]

The main reason why the Commonwealth is entitled to summary judgment on the equal protection claim is that, in contrast to any Second Amendment claim, the equal protection claim triggers only rational basis review and the challenged statute has a conceivable rational basis.  It is perfectly rational for the Massachusetts Legislature to require that only "suitable persons" be allowed to possess or carry guns, in order to ensure that only responsible citizens are trusted with these deadly weapons.  *Cf. Heller*, 554 U.S. at 635 (Second Amendment only protects "law abiding, responsible citizens").  Indeed, the statutory "suitable person" standard would even satisfy intermediate scrutiny because it is substantially related to the Commonwealth's significant interest in keeping firearms out of the hands of irresponsible persons.[17]

That said, Hightower is certainly correct in observing that if the Court were to reach the merits of her Second Amendment claim and grant the Commonwealth summary judgment, then Hightower's equal protection claim would necessarily fail as well.[18]

---

[13]  *See* Commonwealth's S.J. Memorandum (doc. no. 36) at 19.
[14]  Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 14.
[15]  *See* Commonwealth's S.J. Memorandum (doc. no. 36) at 9.
[16]  *Id.*
[17]  *See* Commonwealth's S.J. Memorandum (doc. no. 36) at 13-14.
[18]  *Cf.* Hightower's Opp. to Commonwealth's S.J. Motion (doc. no. 45) at 14.

**Conclusion.**

For the reasons stated above and in the Commonwealth's initial memorandum, the Court should not reach the merits of plaintiff's Second Amendment and Substantive Due Process claims, but should instead dismiss them without prejudice because they are not ripe. Alternatively, if the Court were to reach the merits of these claims, it should hold that the "suitable person" standard is constitutional and enter judgment in defendants' favor.

The Court should enter judgment in defendants' favor on the Procedural Due Process and Equal Protection claims.  Hightower could have sought judicial review of the license revocation; the availability of such post-deprivation judicial review satisfies procedural due process.  Finally, the Massachusetts Legislature's distinction between suitable and unsuitable persons does not violate Equal Protection, either under rational basis review or under intermediate scrutiny.

MARTHA COAKLEY
*ATTORNEY GENERAL OF MASSACHUSETTS*

    /s/ Kenneth W. Salinger
Kenneth W. Salinger (BBO # 556967)
Assistant Attorney General, Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617.963.2075
ken.salinger@state.ma.us

May 20, 2011

Certificate of Service

I hereby certify that this document was filed through the Electronic Case Filing (ECF)
system and thus copies will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those
indicated on the NEF as non registered participants on or before May 20, 2011.

    /s/ Kenneth W. Salinger   .